UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **ALAN BROWN** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **C.A. No. 05-11178-NG** |
| **STATE STREET CORPORATION,** | ) | |
| **STATE STREET BANK, STATE** | ) | |
| **STREET GLOBAL ADVISORS, and** | ) | |
| **STATE STREET GLOBAL** | ) | |
| **ADVISORS, U.K.** | ) | |
| **Defendants** | ) | |

### PLAINTIFF'S OPPOSITION
### TO DEFENDANTS' MOTION TO DISMISS COUNT I OF THE COMPLAINT
### PURSUANT TO FED. R. CIV. P. 12(b)(6)

### <u>Introduction</u>

Before the Court is a rare "what's wrong with this picture" motion in which an

**employer** seeks to wriggle free of the confines of ERISA, while the **employee** urges the

Court to find his state law claims are preempted by the federal statute.[1] The plaintiff

urges the Court to step back from the finely-honed legal arguments of both sides and

view this case for what it unabashedly is: a claim that (1) Alan Brown is entitled to

receive specific stock equity, pension, insurance and other benefits, almost entirely

provided by unquestionable ERISA-based plans, benefits that State Street refuses to

---

[1] Brown asks the Court to speculate, based on the Court's experience with similar cases, as to the probability that if Brown had instead brought a contract action in Suffolk Superior Court seeking stock and pension benefits, that State Street would have promptly removed to federal court and asserted that ERISA preempted these state law claims. In the day-to-day workings of litigation in this field, such a reaction by an employer would have been as reflexive – and automatic – as a knee jerk after the rubber hammer strikes.

provide to him, and (2) that when Brown asserted his right to receive these ERISA-based benefits, State Street promptly fired him.

At first blush, these contentions appear to fit nicely into the two ERISA claims stated in Count One of the complaint. The latter claim – for retaliation – meets the prohibition of 29 U.S.C. § 1140 that it is unlawful for an employer to "discharge, fine, suspend, expel, discipline, or discriminate against a . . . beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ."

The first claim, that State Street refused to provide certain stock equity, pension, medical insurance and other benefits, similarly meets the standards of 29 U.S.C. § 1132(a)(1)(b), which states that "[a] civil action may be brought (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." In short, if Brown prevails in this action, State Street will have to provide him with specific stock equity, pension, insurance and other benefits, all provided to him by ERISA-based plans. He brings this action "to recover benefits due to him" under these plans.

Both claims certainly cross the preemption threshold established by § 514(a) of

ERISA, 29 U.S.C. § 1144(a)(emphasis added):

> Except as provided in subsection (b) of this section, the
> provisions of this subchapter and subchapter III of this
> chapter shall supersede any and all State laws insofar as they
> may now or hereafter **relate to any employee benefit plan**
> described in section 1003(a) of this title and not exempt under
> section 1003(b) of this title.

As the Seventh Circuit held in *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1077

(7th Cir. 1992), an action in which an employee claimed his employer had promised to

enhance benefits beyond those provided by an ERISA plan was preempted by the above

ERISA section:

> "[r]elates to" has been read expansively. A suit based on the
> difference between the pension promised by contract and the
> pension established by the plan "relates to" the pension plan.
> Thomas Reed Powell defined the legal mind as one that can
> think of something inextricably connected to something else,
> without thinking of what it is connected to. Not even the most
> segmented mind could contemplate the benefit without the
> plan.

953 F.2d at 1077 (internal citations omitted). *See Dranchak v. Akzo Nobel Inc.*, 88 F.3d

457, 459 (7th Cir. 1996) (noting that contract specifying how much to disburse from

pension and welfare trusts in event of discharge is covered by ERISA).

Despite this facial applicability of ERISA to Brown's claims, State Street seeks to

inflate a red herring of a theory to leviathan proportions, and then hold up that beast as

residing outside the bounds of ERISA preemption. State Street asks the Court to limit its

examination to the company's general Executive Voluntary Separation Plan (EVSP),

which is not even properly before the Court, and to ignore the specific terms offered to

Brown, and then conclude that this suit for pension and medical benefits falls outside the bounds of ERISA preemption.

The Court should reject State Street's argument and find that this case is simply what it purports to be: an action claiming that State Street wrongly refused to provide ERISA-based benefits and that State Street wrongfully fired Brown when he asserted his right to these benefits. The motion to dismiss should be denied, and the case should proceed under Count One of the complaint.[2]

### Facts

It is axiomatic that in reviewing a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) "the court must assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability. Those facts may be derived from the complaint, whatever documents are either annexed to it or fairly incorporated into it, and any relevant matters that are susceptible to judicial notice." *Redondo-Borges v. United States HUD*, 2005 U.S. App. LEXIS 18436, at *6 (1st Cir. Aug. 26, 2005). *See Edes v. Verizon Communs.*, 417 F.3d 133, 137 n.4 (1st Cir. 2005). Applying that standard, the relevant facts include the following:

1. State Street Global Advisors (SSgA) is a division of State Street Corporation. (Complaint, ¶ 3).

---

[2]  The plaintiff readily concedes that he cannot prevail under **both** the ERISA claim in Count One and the state law claims in the following counts. This belt and suspenders complaint was brought in anticipation that State Street would move to dismiss either the ERISA count or the common law counts. Brown agrees that if the ERISA count is proper, it preempts the state law claims. If, as the defendants suggest, the ERISA claim should be dismissed, then the case should proceed under the common law counts.

2.      Alan Brown was both Group Chief Investment Officer and Vice Chairman of State Street Global Advisors ("SSgA") and an Executive Vice President of State Street Corporation. (Complaint, ¶ 2).

3.      In 2003, State Street offered a Voluntary Separation Plan to many of its employees and an enhanced Executive Voluntary Separation Plan to Executive Vice Presidents (collectively "VSP") as an inducement to accept early retirement. (Complaint, ¶ 11). The VSP concerned and related to the provision of one or more employee benefit plans. (Complaint, ¶ 22).

4.      So many employees opted for the plan that State Street became concerned that it would lose all senior management at SSgA, including Brown. (Complaint, ¶ 12).

5.      As an inducement for Brown to remain actively employed at State Street, in June 2003 the corporation's chairman, David Spina, offered a modified VSP to Brown. Under this modified plan, Brown could exercise the VSP at any time up until he reached age 55, rather than within the limited time period for other State Street employees. Brown was 50 years old at the time. (Complaint, ¶ 13). Brown accepted State Street's offer, (Complaint, ¶ 14), and remained at State Street. (Complaint ¶¶ 14, 16).

6.      Similar modified VSP plans were offered to a few other highly placed executives. (Complaint, ¶¶ 13, 18).

7.      In March 2005, Brown elected to exercise his rights under the modified VSP.

8.      In response to Brown's assertion of his rights under the modified VSP, State Street terminated Brown's employment and refused to provide him with the benefits of the VSP program. (Complaint, ¶ 21).

Neither the Voluntary Separation Plan, the Executive Voluntary Separation Plan nor the "modified" VSP Spina offered to Brown were attached to the complaint. Nonetheless, State Street attached to its motion to dismiss an affidavit from its counsel stating "on information and belief" that four versions of the VSP were distributed to employees. A copy of one such plan was attached to the motion with the caveat that it was attached "solely to provide the Court with an example of the program materials and is not exclusively relied upon by State Street."[3] Lee affidavit ¶ 3. There is no evidence this document reflects the terms of any plan proposed to Brown. Brown has moved to strike this document and suggests that this Court cannot and should not place any reliance on it.

---

[3]  State Street's legal memorandum not only relies on this VSP document, but it misstates the document's terms. For example, State Street makes a great point of the assertion that the VSP document attached to Attorney Lee's affidavit provides that "[s]everance was to be a single lump-sum payment." Memorandum at p. 2. In fact, because Brown's total benefit amount far exceeded $25,000, Complaint ¶15, the document itself provided for payments over a five year period. Separation Guide at p. 9.

## Discussion

**I.    The retaliation claim is controlled by ERISA[4].**

The complaint alleges that in response to Brown's assertion that he was entitled to receive enhanced stock equity, pension and other benefits as promised by Spina, State Street terminated his employment. (Complaint, ¶ 21). Count One of the complaint alleges that this conduct violated the anti-retaliation provision of ERISA, 29 U.S.C. § 1140, which states,

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . .

State Street does not dispute that Brown was a "participant" or "beneficiary" in the company's stock equity, pension, medical and other benefit plans, nor that those plans were ERISA plans. Nor does State Street dispute that just prior to his termination, Brown requested to receive stock equity, pension, medical and other benefits provided by those plans, as enhanced by the modified VSP extended to him. As a result, while there may be some dispute as to the amounts and timing of the equity, pension and other benefits to which Brown was entitled – whether they were to be enhanced by the modified VSP or

---

[4]  Technically, the ERISA retaliation claim preempts what could be a state law "termination for a reason in violation of public policy" action. *See Upton v. JWP Businessland*, 425 Mass. 756, 682 N.E.2d 1357 (1997). Should the Court allow the defendants' motion and find that ERISA does not preempt such a claim, Brown will consider amending the complaint to add this state law claim, permitting tort damages for emotional distress and damage to his reputation. *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 813 n.8, 575 N.E.2d 1107 (1991); *DeRose v. Putnam Management Co.*, 398 Mass. 205, 212 n.7, 496 N.E.2d 428 (1986).

not – there can be no dispute as to whether or not Brown exercised his right to receive **some** benefits from these ERISA plans. Nor, for purposes of the present motion, can there be any dispute but that Brown's request for these benefits was the motivating factor in his dismissal.

In short, Brown was a "participant" and a "beneficiary" of these plans and was entitled to their benefits. Perhaps he was entitled to have those benefits enhanced or accelerated by the VSP. That will be the subject of this litigation. It is undisputed, for purposes of this motion, however, that when he demanded to receive those benefits, State Street fired him. That is the essence of an ERISA retaliation claim.

Brown could not be fired for asserting his right to ERISA benefits.[5] Section 1140 "was designed to protect the employment relationship which gives rise to an individual's pension rights." *Deeming v. Am. Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990). *See also The Blaw Knox Retirement Income Plan v. White Consol. Indus., Inc.*, 998 F.2d 1185, 1191 (3d Cir. 1993) ("The prohibitions of [section 1140] are primarily aimed at

---

[5]  The retaliation claim does not rest on whether Brown was actually entitled to receive the benefits of the VSP. All he needs to prove is that he had a good faith belief he was entitled to the benefits. *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 855 (1st Cir. 1998) ("The success of a retaliation claim does not require that the alleged wrongful conduct itself be illegal. For her retaliation claim to succeed, Rodriguez merely needed to show that she 'reasonably believed' that the conduct of which she complained or threatened to complain violated Title VII"); *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 33 (1st Cir. 1990) ("[T]he success of a retaliation claim does not require that the conduct plaintiff opposed was in fact a Title VII violation. It is sufficient if the plaintiff has a reasonable belief that there is a Title VII violation.") (Internal citations omitted). *See Claudio-Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99 (1st Cir. 2004) (same standard applied to FLSA retaliation claim). Actual entitlement to the enhanced and accelerated benefits goes only to Brown's damages. Under the retaliation claim, Brown might recover lost wages. Under the failure to provide benefits claim, he might receive the value of the lost benefits or equitable relief. The claims are independent of one another.

preventing unscrupulous employers from discharging or harassing their employees to prevent them from attaining their vested pension rights."). The Supreme Court addressed this issue in *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990), in which the Court held that an action for wrongful termination based on the "employer's desire to avoid contributing to, or paying benefits under, the employee's pension fund – 'relate[s] to' an ERISA-covered plan within the meaning of § 514(a), and is therefore pre-empted." *Id.* at 140. *See Fitzgerald v. Codex Corp.*, 882 F.2d 586, 588-89 (1st Cir. 1989) ("The allegation that an employee was discharged from his employment for the purpose of depriving him of continued participation in the employer's company-provided insurance program states a cognizable claim under § 510 of ERISA (29 U.S.C. § 1140).")

In *Fitzgerald, supra*, for example, the plaintiff employee charged that he was fired after he claimed that his former wife was entitled to benefits under his employer's medical insurance program.[6] The First Circuit held that Fitzgerald's complaint "is grounded upon Codex's alleged wrongful motivation in terminating his employment: to avoid payment under an ERISA plan to Fitzgerald's former wife. This claim has much more than the requisite 'connection or reference' to an ERISA plan. Its focus is Codex's interference with alleged benefit rights. This is precisely the type of action that section 510 sought to cover and that is essential to the Act's protection." *Fitzgerald,* 882 F.2d at

---

[6] As is the norm in these cases, the plaintiff originally filed suit in state court and the employer removed, claiming ERISA preemption of the state law claims. The employer then filed a motion to dismiss, which the district court allowed, asserting that although the issue was preempted by ERISA, the complaint failed to state an ERISA claim. The First Circuit agreed that ERISA preempted the state law claim, but reversed, holding that the retaliatory conduct, if proven, violated § 1140.

588 (citation omitted). The same analysis applies to the present retaliation claim. Brown's claim for benefits provided by ERISA plans was, he suggests, the motivating factor in his termination.

Should the ERISA-retaliation count go forward, Brown will be required to meet the familiar three-stage burden-shifting analysis used in most discrimination cases. *Lehman v. Prudential Ins. Co. of Am.*, 74 F.3d 323, 330 (1st Cir. 1996) ("This circuit, along with most others, analyzes ERISA discrimination claims under the same three stage burden-shifting paradigm described above. *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37-38 (1st Cir. 1995) (collecting cases)."). *See Toledo v. Ayerst-Wyeth Pharm.*, 852 F. Supp. 91, 100 (D.P.R. 1993) ("The plaintiff must show his discharge was motivated by his employer's desire to retaliate against him for exercising such a right or to interfere with an existing right or with the attainment of benefits to which he might become entitled."). Once Brown proves his prima facie case, the burden shifts to State Street to offer a non-discriminatory reason for terminating Brown. Brown then assumes the burden of proving that reason was a pretext for ERISA-discrimination.

The complaint meets this standard. Brown asserts that as a result of State Street's promise to him, which he accepted, he was entitled to exercise his right to receive stock equity, pension and other benefits – as part of various ERISA plans – at any time up to age fifty-five. He alleges that when he asserted that right, he was fired, in other words, that the motivating factor in State Street's decision to terminate his employment was his claim to ERISA benefits, as promised to him by Spina. He brings this action to receive

the benefits he was promised. That is the essence of an ERISA retaliation claim under 29

U.S.C. 1140.

II.    **Determination of whether an early retirement incentive plan is covered by ERISA is highly fact-based. The court should _not_ find, on a motion to dismiss with a sparse factual record, that the modified Voluntary Separation Plan at issue is not an ERISA plan.**

State Street goes on at great length suggesting that the modified Voluntary

Separation Plan offered to Brown was not an ERISA plan[7]. Thus, State Street argues, he

was not a beneficiary of an ERISA plan and he was not denied any benefits of an ERISA

plan. As interesting as that argument may be, it is generally irrelevant. As discussed

above, Brown sought to receive the benefits of several **other** ERISA plans concerning

pension, stock equity and medical insurance. The VSP merely controlled the timing of his

eligibility for those benefits and the amounts to which he was entitled. While there may

be a dispute as to when and how much State Street owed to Brown, regardless of the

ERISA status of the VSP, the complaint alleges that he claimed entitlement to ERISA

benefits and, further, that he was fired in retaliation for claiming those benefits[8]. As a

result, whether or not the VSP, standing alone, was an ERISA plan is irrelevant. There is

no dispute that this action "relates to" Brown's claims for benefits under State Street's

various other ERISA plans, as modified by the VSP, bringing it within the purview of

---

[7]  Actually, State Street totally ignores the **modified** plan offered to Brown and, instead, argues that the **general** VSP described in the document attached to Atty. Lee's affidavit is not an ERISA plan. The complaint, the motion to dismiss and the affidavit are all silent as to the specifics of the **modified** plan at issue.

[8]  The complaint states, "[t]he VSP concerned and related to the provision of one or more employee benefit plans." Complaint ¶ 22.

ERISA § 514(a), 29 U.S.C. § 1144(a). *Bartholet*, 953 F.2d at 1077; *Dranchak*, 88 F.3d at 459 (contract specifying how much to disburse from pension and welfare trusts in event of discharge is covered by ERISA).

In any event, the modified VSP offered to Brown **was** an ERISA plan. At a minimum, for purposes of this Rule 12(b)(6) motion, the evidence is insufficient to find that the modified VSP clearly was **not** an ERISA plan. Whether or not a "severance" or "early separation" plan is an ERISA-covered plan has been the subject of considerable litigation, with decisions coming down on both sides of the issue. Determination of this close question is highly fact-dependent, the antithesis of a decision based solely on the allegations of a complaint on a motion to dismiss[9].

The First Circuit emphasized the fact-based nature of such decisions in *Belanger v. Wyman-Gordon Company*, 71 F.3d 45 (1st Cir. 1995). Noting the vague nature of the Supreme Court decision in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12 (1987), a case that considered when a benefit plan is covered by ERISA, the First Circuit said,

> The upshot is that, in the albedo of *Fort Halifax*, the existence of a plan turns on the nature and extent of an employer's benefit obligations. Withal, making particularized judgments in this area on the basis of vague etchings of policy is no mean feat. As we wrote on an earlier occasion, "so long as *Fort Halifax* prescribes a definition based on the extent and complexity of administrative obligations, line drawing . . . is necessary and close cases will approach the line from both

---

[9]  Since "failure to state a claim on which relief can be granted" is an affirmative defense, State Street carries the burden of proof on this issue and must produce sufficient evidence for the Court to find that ERISA does not preempt the state law claims. *Ingram v. Brink's, Inc.*, 414 F.3d 222, 232 (1st Cir. 2005) (Defendant bears burden of proof on affirmative defense); *Rodriguez-Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52, 64 (1st Cir. 2005)(same).

sides." *Simas v. Quaker Fabric Corp.*, 6 F.3d 849, 854 (1st
Cir. 1993).

*Belanger*, 71 F.3d at 454. Summing up, the Court said, "In this cloudy corner of the law,

each case must be appraised on its own facts." *Id.*  *See Simas v. Quaker Fabric Corp.*, 6

F.3d 849, 853 (1st Cir. 1993) ("It is a matter of degrees but under *Fort Halifax* degrees

are crucial."); *see also O'Connor v. Commonwealth Gas Co.*, 251 F.3d 262,  267 (1st Cir.

2001) ("The determination of what constitutes an ERISA plan thus turns most often on

the degree of an employer's discretion in administering the plan. Our cases have noted

that such determinations are not clear cut and necessarily require line drawing.");

*McMahon v. Digital Equip. Corp.,* 162 F.3d 28, 36 (1st Cir. 1998) ("The question of

whether an ERISA plan exists is a question of fact, to be answered in light of all the

surrounding facts and circumstances from the point of view of a reasonable person.")[10].

---

[10]  State Street does not even suggest that because the modified VSP was offered to a small
number of top level executives (Complaint ¶¶ 13, 18), it was too small to be considered an
ERISA plan. Courts have held that such "top hat" plans are covered by ERISA **even if they
apply to only one person**, so long as they meet the *Fort Halifax* standards.  For example, in
*Williams v. Wright*, 927 F.2d 1540 (11th Cir. 1991), the Eleventh Circuit held "that a plan
covering a single employee, where all other requirements are met, is covered by ERISA." The
Sixth Circuit reached the same conclusion in *Cvelbar v. CBI Ill. Inc.*, 106 F.3d 1368 (6th Cir
1997), a case with facts similar to the present case. Noting the support of Secretary of Labor
Robert Reich for the position, the Court held "that an ERISA plan can cover a single employee."
*Id.* at 1373. *See Patterson v. Shumate*, 504 U.S. 753, 755 (1992) (One person pension plan was
an ERISA plan).  *See also Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 264 (9th Cir. 1991)
(coverage of even one non-owner employee is sufficient to bring a policy within ERISA's
scope); *Madonia v. Blue Cross & Blue Shield of Virginia*, 11 F.3d 444, 448 (4th Cir. 1993), *cert.
denied*, 511 U.S. 1019 (1994) (coverage of non-owner employee rendered policy an ERISA
plan); *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 408 (9th Cir. 1995)(same).
Finally, *Williams*, 927 F.2d at 1545, refers to a number of opinion letters issued by the
Department of Labor that find that a plan that otherwise qualifies for ERISA coverage will not be
excluded because it covers only a single employee. *See, e.g.,* Opinion Letter 75-09 (June 24,
1975); Opinion Letter 79-75 (Oct. 19, 1979); Information Letter to Mr. Joel P. Bennett (Oct. 22,
1985). The October 22, 1985 letter expressly states that ERISA coverage is "not *[continued  . . . ]*

Applying such detailed factual analysis, courts have concluded that some retirement incentive plans have been covered by ERISA while other similar plans have not been covered. A few examples demonstrate the fact-based nature of the determination. In *Simas, supra*, the First Circuit held that Massachusetts' "tin parachute" statute, Mass. G. L. c. 149, § 183, requiring severance payments to employees who lose their jobs within specified periods before or after a corporate takeover, was preempted by ERISA. Although the statute called for a single, one-time severance payment and nothing more, the statutory scheme required "some ongoing administrative mechanism for determining, as to each employee discharged within two years after the takeover, whether the employee was discharged within the several time frames fixed by the tin parachute statute and whether the employee was discharged for cause or is otherwise ineligible for unemployment compensation under Massachusetts law." *Simas*, 6 F.3d at 853. Because of the ongoing nature of the administrative burden placed on the employer, the First Circuit held that the statute called for the creation of an ERISA-based severance plan and was thus preempted by the federal statute.

The First Circuit reached that conclusion in the face of, and, in fact, in reliance on, the Supreme Court's decision in *Fort Halifax, supra*, in which the Court held that Maine's similar plant-closing law – which also required a one-time severance payment – was not preempted by ERISA. The difference between the two statutes, the First Circuit held in *Simas*, was the degree of ongoing involvement required of the employer under the

---

*[continued from previous page]* affected by the fact that the arrangement is limited to covering a single employee, is negotiated between the employer and the employee, or is not intended by the employer-plan sponsor to be an employee benefit plan for purposes of [ERISA] coverage."

Massachusetts statute, as compared with the Maine statute. Of key importance in *Simas* was the requirement for the employer to determine whether an employee was fired "for cause," in which case he would not be entitled to the benefits of the plan. "The 'for cause' determination, in particular, is likely to provoke controversy and call for judgments based on information well beyond the employee's date of hiring and termination," the Court said. 6 F.3d at 853.

Comparing the outcomes in *Simas* and *Fort Halifax* demonstrates the intensive fact-based nature of determining when a plan is controlled by ERISA and when it is not. A similar fact-intensive analysis of "the nature and extent of [State Street's] benefit obligations" (*Belanger*, 71 F.3d at 454) to Brown under the **modified** VSP would be required before determining that as a matter of law his claims are not preempted by ERISA.

Cases following *Fort Halifax* have similarly been decided based on their specific facts. For example, in *O'Connor*, 251 F.3d at 264, the Court concluded that because an early retirement incentive plan "was little more than a lump-sum severance package, it was not an ERISA-covered plan."[11] In contrast, in *Macomber v. Digital Equip. Corp.*, 865 F. Supp. 65 (D.N.H. 1994), the Court found that a strikingly similar severance plan also designed to induce employees to voluntarily take early retirement was an ERISA plan. Administration of that plan involved ongoing decision making by the employer, the

---

[11]  Finding the Plan was not an ERISA plan was not the end of that case, however. The Court reversed and remanded "so that the district court may consider whether to  assert supplemental jurisdiction and address the state claims." *Id*. at 264-265. In the present case, the court has jurisdiction over the state law claims under diversity jurisdiction, should the ERISA claim be dismissed.

Court said, bringing it into the ERISA sphere. "Among other things, in determining who was eligible to participate in the TFSO, Digital was required to analyze each employee's particular circumstances in light of the appropriate criteria." *Macomber*, 865 F.Supp. at 70. Similarly, the First Circuit held in *Vartanian v. Monsanto Co*., 14 F.3d 697, 701 (1st Cir. 1994), that an employee who alleged his employer deceived him about an early retirement incentive plan was barred from bring state law claims, but, instead, was required to state his claim as an ERISA violation. "Vartanian's claims 'relate to' an ERISA plan and are expressly preempted by ERISA," the Court held. *Id*. at 700.

The *O'Connor* court summarized the analysis succinctly: "if they [the plans] require an ongoing administrative scheme that is subject to mismanagement, then they will more likely constitute an ERISA plan; but if the benefit obligations are merely a one-shot, take-it-or-leave-it incentive, they are less likely to be covered." 251 F.3d at 267. When management must make individualized decisions concerning eligibility or the level of benefits, where payments are made over a period of time rather than in a lump sum or where the employee requires protection from self-dealing or bad motivation in administration, the plan will be controlled by ERISA. Applying this standard, the early retirement incentive plans in *O'Connor, supra; Belanger, supra*; and *O'Connor, supra*

were all found to be outside of ERISA because, on their facts, they provided for only a one-time salary enhancement payment.[12]

State Street appears to agree with this analysis. *See* Memorandum at pp. 6-9. "If, throughout the administration of its program, an employer is required to make individualized decisions, the threat of mismanagement is more likely and ERISA governs." Memorandum at p. 8. The difficulty with application of this required fact-specific analysis, however, is that at this initial stage of the litigation, while the analysis must be fact-specific, the record is fact-deficient. There simply is no evidence regarding the determinative factors.

That absence of evidence does not deter State Street, however. As discussed above, State Street makes much of the assertion that "the VSP was a one-time, take-it-or-leave-it severance package, not an ERISA plan." Memorandum at p. 6. State Street says that no "ongoing administration" was required by the VSP itself, *id.* at p. 7, and that the plan was offered only to "U.S. employees." *Id.* at p. 2. None of these facts appears in the complaint. State Street's analysis of the VSP program relies entirely on Attorney Lee's affidavit – based on "information and belief" – and on the document attached to Attorney Lee's affidavit. If this document, or the affidavit, are stricken, as plaintiff requests, the factual basis for State Street's argument evaporates. Even if the affidavit is not stricken, there is no evidence that the document reflects the terms of the plan actually extended to

---

[12] Although the plan in *O'Connor* also included pension benefits, the First Circuit held those benefits were peripheral and that the "severance bonus was the meat and potatoes of the PRP." 251 F.3d at 267. The pension enhancement, the Court said, was only "little more than [an] afterthought[] to the severance bonus," *id.* at 269, and would not have been significant enough to influence an employee's conduct.

Brown. On its face, the document does not claim to describe the "modified" plan extended to Brown.

Accepting the allegations of the complaint as true, however, takes the wind from State Street's argument. For example, if, as the complaint alleges (Complaint, ¶ 13), State Street chose to offer a modified VSP program that would remain available for the next **five years** to Brown and selected others, then management retained considerable discretion and the plan required years of ongoing supervision. Funds for this program had to remain available and protected for at least five years.[13] Brown would be subject to termination for cause, a discretionary management decision, during that five-year period, an action that could eliminate his eligibility for the plan[14]. In contrast to the strict mathematical calculations State Street suggests would apply, management was required to make discretionary decisions concerning dates and amounts of salary to be applied to Brown if and when he elected to exercise his rights during that five-year employment period.

The possibility that Brown would be discharged for cause during the five-year eligibility period is a key factor militating in support of viewing the modified VSP, as

---

[13]  In fact, State Street's obligations extended far beyond this five-year offering period, since rather than the single lump-sum payment State Street suggests the plan called for, Brown would receive payments over five years **after** he elected the VSP. *See* n.3 *infra*. Thus, State Street's oversight of the plan, as proposed to Brown in June 2003, extended over **ten years**. This was no small undertaking; the complaint alleges Brown's benefits from the VSP would be "several million dollars." Complaint, ¶ 14. By contrast, the First Circuit found a two year ongoing obligation was sufficient to require ERISA protection in *Simas*, 6 F.3d at 853.

[14]  Even the unmodified VSP document offered by State Street requires, as a condition of continued eligibility for the VSP, that "[y]ou remain employed by State Street in a satisfactory manner" until the termination date. Separation Guide at p. 3.

applied to Brown, as an ERISA plan. The First Circuit considered an identical issue involving whether an employee were to be terminated "for cause" as a major factor in determining that the severance program in *Simas, supra*, was preempted by ERISA. "The 'for cause' determination, in particular, is likely to provoke controversy and call for judgments based on information well beyond the employee's date of hiring and termination." *Simas*, 6 F.3d at 853. The Court noted the significance of this factor in *O'Connor, supra.*, commenting that "*Simas's* for-cause criterion involved the type of discretionary determination subject to abuse that triggers an employer's fiduciary obligation to its beneficiaries." 251 F.3d at 269. An "unscrupulous employer," *Blaw Knox,* 998 F.2d at 1191, of the type ERISA was intended to protect against could easily decide to wrongfully terminate an employee for cause before he exercised his VSP rights in that five-year VSP eligibility window, thus depriving the employee of his benefits. Unless the VSP was an ERISA plan, the employee would have no recourse against such action.

    In summary, the determination of whether the modified VSP as extended to Brown is controlled and preempted by ERISA requires a highly fact-based analysis focusing on the "the nature and extent of [State Street's] benefit obligations" to Brown. *Belanger*, 71 F.3d at 454. Such an analysis cannot and should not be made at the motion to dismiss stage since there simply are not sufficient facts before the Court. Even with the limited facts available, the plan requires ten years of management oversight and leaves management discretion sufficient to revoke Brown's eligibility at any time by dismissing

him for cause. On that basis alone, the Court should find that the proposal was for an

ERISA-protected plan.

<div style="margin-left: 45%">

Alan Brown, plaintiff
By his attorneys,

/s/ Harvey A. Schwartz
HARVEY A. SCHWARTZ
  BBO. # 448080
LAURIE A. FRANKL
  BBO # # 647181
Rodgers, Powers & Schwartz
18 Tremont Street
Boston, MA 02108
(617) 742-7010

</div>

Date:  September 21, 2005