UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN BROWN        )<br>    Plaintiff            )<br>                            )<br>v.                          )<br>                            )<br>STATE STREET CORP. )<br>and STATE STREET    )<br>GLOBAL ADVISORS  )<br>    Defendants        ) | C.A. 05-11178-NG |

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO ISSUE A LETTER OF REQUEST FOR
INTERNATIONAL JUDICIAL ASSISTANCE (UNITED KINGDOM) TO
COMPEL THE PRODUCTION OF DOCUMENTS FROM SCHRODER
INVESTMENT MANAGEMENT LIMITED**

Based on what most charitably can be termed guesses and speculation, the defendants seek to obtain international discovery from the plaintiff's present employer, who, by something less than a coincidence, is a major competitor of the defendants. They seek to discover, among other information, who his present customers are, what contacts he has with these customers and what contacts he has now with present State Street employees, information that may have considerable commercial value to the defendants' business but information that bears not a shred of relationship to the present litigation. Other documents they demand they either already have or will be provided by the plaintiff in his document production. This motion should be denied in its entirety.

## Facts

The only facts before the court on the present motion are the allegations in the complaint. Alan Brown was employed by State Street Global Advisors ("SSgA"), the largest

institutional asset manager in the world, as its Group Chief Investment Officer. (Complaint ¶ 1). In 2003, State Street offered a Voluntary Separation Plan ("VSP") to its employees as an inducement to take early retirement. (Complaint ¶ 11). An unexpectedly large number of employees accepted the plan. (Complaint ¶ 12). In an effort to retain SSgA's top leadership, State Street's Chief Executive Officer offered the VSP benefits to Brown exercisable over the next five years, rather than immediately. (Complaint ¶ 13). Brown accepted that offer. Brown remained in his leadership position at SSgA until March 2005, at which time he notified State Street that he wished to exercise his rights under the VSP. (Complaint ¶ 20). State Street then denied that he was entitled to any benefits and immediately terminated his employment. (Complaint ¶ 21).

The subject of the present discovery motion, Schroder Investment Management Limited, a London-based competitor of SSgA and Brown's present employer, is mentioned in neither the complaint nor the answer.

The defendants fail to even attempt to offer sworn evidence of any need for the discovery they seek, much less any need to obtain it from Schroder. Whatever the burden the moving party must meet to obtain the international discovery sought by this motion, State Street fails to make the effort to place a toe over the evidentiary threshold. No sworn evidence is offered in support of the motion. No facts of any kind are alleged, sworn or otherwise, to justify the motion. For that reason alone the motion should be denied.

## The applicable legal standard

A court's oversight of efforts to compel foreign non-party entities to produce evidence should be particularly strict. But for international treaty, in this case the Hague Convention

on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, codified at 28 U.S.C. §§ 1781 *et seq.*, this court could not compel a non-party business outside its jurisdiction to produce evidence. The Supreme Court has cautioned that the exercise of this extraordinary power should be cautious and well considered:

> Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses. For example, the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. Objections to "abusive" discovery that foreign litigants advance should therefore receive the most careful consideration.

*Societe Nat. Ind. Aero. v. U.S. Dist. Court*, 482 U.S. 522, 546 (1987). The Court cited five factors derived from the Restatement of Foreign Relations Law of the United States (Revised) § 437(1)(c) (Tent. Draft No. 7, 1986) (Approved May 14, 1986), to be considered before allowing such discovery:

> (1) the importance to the . . . litigation of the documents or other information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would undermine the important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located.

482 U.S. 522, 544, n.28. This court should apply those factors in ruling on the present motion.

As with all discovery disputes, this Court should begin with the standards of Fed. R. Civ. P. 26(b)(2), which admonishes generally that:

> the . . . extent of the use of the discovery methods otherwise permitted under these rules . . . shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

## Discussion

**1. The documents sought can best be obtained from other readily available sources, thus the extraordinary discovery is not warranted.**

Strangely, much of the discovery State Street seeks to obtain from a British corporation is simply State Street's own documents, documents it presumably already possesses. For example, Request No. 1 seeks agreements between Brown and State Street. Request No. 2 seeks documents concerning State Street's VSP. Request No. 3 seeks documents concerning communications between Brown and State Street, as does Request No. 4. Request Nos. 11, 12, 13, 14 and 15 seek documents concerning Brown's termination by State Street. The motion fails to suggest why Schroder would be expected to have these documents, or, more to the point, why State Street does not already have them in its possession, which would obviate the need for this discovery.

State Street has already requested that Brown produce identical documents as part of his document production. Brown agrees to do so. Unless State Street can demonstrate that neither it nor Brown have copies of these requested documents the motion to order Schroder to produce these same documents should be denied.

2. **The request for documents concerning Brown's subsequent employment with Schroder seeks irrelevant information.**

Brown, one of the most successful and best known financial managers in the world, was hired by Schroder after he left State Street. State Street seeks to obtain copies of Brown's employment contract and all documents involved in his recruitment and hiring. Requests Nos. 6, 7, 8 and 9. None of this information is relevant to the present litigation.

State Street wonders in its motion whether Schroder has agreed to reimburse Brown for damages he fails to collect in the present action. Request No. 10 asks Schroder to produce documents concerning indemnification of Brown in the present litigation. Beyond total speculation, State Street offers no evidentiary basis for this guess. Guessing is not enough to provide a basis for compelling a non-party, especially an overseas non-party, to go through the expense and inconvenience of compulsory discovery. *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003) ("A litigant may not engage in merely speculative inquiries in the guise of relevant discovery.") State Street has noticed Brown's deposition. It can ask him at his deposition if he has any such agreement and, should he say he does, obtain a copy of the agreement from him. (Parenthetically, no such agreement exists.) Even were there to be such an indemnification agreement, it would be irrelevant to the questions of whether State Street extended a VSP benefit to Brown and whether, if so, it failed to provide that benefit, the only issues in the litigation.

State Street seeks details about Brown's present employment contract. Requests Nos. 8 and 9. The only damages Brown seeks are the value of the VSP that was denied to him. Significantly, he is not seeking compensation for lost income or damage to his reputation, or any similar tort-type damages. Evidence of his employability, income, earning capacity, and mitigation of damages, evidence that could be obtained from his employment records at Schroder, would be relevant were he seeking such damages. In the absence of such a claim, however, the evidence sought is irrelevant. If he is entitled to the VSP benefits, that entitlement is unaffected by any subsequent employment or earnings. If he is not entitled to the VSP, then evidence as to his present employment is besides the point.

The requested documents concerning Brown's present employment are irrelevant.

**3.   Evidence concerning Schroder's recruitment of Brown is irrelevant.**

State Street seeks documents concerning how Brown was recruited by Schroder. Requests Nos. 7 and 8. In its motion, State Street suggests that it is crucial to the outcome of the case to determine whether State Street fired Brown or whether he quit. Motion p. 1. Nothing that Schroder could possess would shed any light on that determination. Brown submitted a March 11, 2005 letter to State Street in which he claimed to be exercising his rights under the VSP. State Street treated that letter as a resignation. That is the entirety of the events concerning Brown's departure from State Street. The letter will speak for itself. Whether or not Brown had already secured employment with Schroder as of that date has no effect on whether the words of the letter constituted a resignation, as State Street says they do, or whether they constituted the exercise of a claim for benefits, as Brown suggests.

Simply put, Brown and State Street either entered into an agreement to provide the VSP benefits or they did not. That is all this case is about. If there was such an agreement, State Street owes Brown a substantial sum of money. If there was no such agreement, State Street owes Brown nothing. None of the documents sought from Brown's subsequent employer, which played no role in any of the interactions between the parties during the time of Brown's employment, bears any relevance to the single, straightforward question in the case: was there a VSP agreement or not.

**4. Documents concerning Brown's present clients are irrelevant and are sought only for State Street's business purposes unrelated to any claim in the present action.**

The final set of documents State Street seeks concern Brown's actions since he started working at Schroder, specifically, contacts with former State Street clients, Request No. 16; Brown's efforts to solicit business competitive with State Street, Request No. 17; Brown's communications with current or former State Street personnel, Request No. 18, and efforts to solicit current or former State Street personnel, Request No. 19.  Perhaps because it would be impossible to do so, State Street does not attempt to argue that any such documents bear any relevance to any claim or defense in the present action. Further, State Street has already requested the identical documents directly from Brown.

At best, some of these documents might show whether Brown is complying with the limited non-competition agreement he has with State Street, although these requests go far beyond the carefully delineated bounds of that agreement. Even were that the situation, it is improper to utilize discovery in one action for purposes of a potential unrelated legal action. In fact, use of legal process – in this case, a request for documents -- "for an immediate

purpose other than that for which it was designed and intended" – the discovery of evidence relevant to the present action – constitutes the tort of abuse of process. Restatement (2d) of Torts § 682, at 475 (1977). *See Simon v. Navon*, 71 F.3d 9, 15 (1st Cir. 1995)("Typical abuse of process cases involve misuse of such procedures as discovery.") The use of discovery to uncover evidence relevant only to a possible but **unplead** counterclaim has been characterized as "bootstrapping of the most egregious sort. The Court finds that this argument veers extremely close to the borders of discovery abuse." *Malloy v. Wang Laboratories, Inc.*, 95 F.R.D. 488, 490 (D. Mass. 1982)

"Discovery is not for fishing expeditions." *Eastern Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n*, 357 F.3d 1, 9 (1st Cir. 2004). There is no claim or counterclaim that Brown breached any non-competition or non-solicitation agreement he may or may not have. It is abuse of process for State Street to use the guise of legitimate discovery in the present action to ascertain whether its competitor, Schroder, is soliciting State Street clients, rightfully, wrongfully or otherwise.

## Conclusion

State Street proves no compelling reason for the Court to order the extraordinary discovery sought by this motion. To the contrary, all of the information sought by this motion is either already in State Street's possession, is easily discoverable from the plaintiff himself, or is completely speculative. Further, much of the discovery sought is irrelevant to any claim in this action but is sought for State Street's unrelated competitive business purposes. This Court is familiar enough with employee-employer litigation to recognize that irrelevant discovery can be sought from a plaintiff's subsequent employer more to embarrass

the plaintiff in his present relationship than to uncover relevant evidence concerning his past relationship. The present motion is a gold-star example of such discovery abuse.

The motion should be denied in its entirety.

                Respectfully submitted,
                Alan Brown, plaintiff,
                By his attorneys,

                /s/ Harvey A. Schwartz
                Harvey A. Schwartz
                BBO # 448080
                Laurie A. Frankl
                BBO # 647181
                Rodgers, Powers and Schwartz
                18 Tremont Street, Suite 500
                Boston, MA 02108
                617-742-7010