## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **ALAN BROWN** | ) | |
| **Plaintiff** | ) | |
| | ) | **CA No. 05-11178-NG** |
| **v.** | ) | |
| | ) | |
| **STATE STREET CORPORATION,** | ) | |
| **and STATE  STREET GLOBAL** | ) | |
| **ADVISORS** | ) | |
| **Defendants** | ) | |

## AMENDED COMPLAINT
### and jury trial demand

## Introduction

1.    This is a civil action by the former Vice Chairman and Group Chief
Investment Officer of State Street Global Advisors, the largest institutional
asset manager in the world, against his former employer. The plaintiff
alleges the defendants breached an agreement he entered into with State
Street Corporation's Chief Executive Officer as an inducement for the
plaintiff to remain with the business at a time when many other senior
managers were leaving.  The plaintiff alleges that the defendants abruptly
terminated his employment when he sought to enforce that agreement.

## Parties

2.      The plaintiff, Alan Brown, is a British citizen and a resident of London, England.  Until his termination, he was Group Chief Investment Officer and Vice Chairman of State Street Global Advisors ("SSgA") and an Executive Vice President of State Street Corporation. Mr. Brown has over 30 years experience in investment management.  He joined State Street in 1995. He was named Chief Investment Officer of the Year two years consecutively by "Financial News."

3.      The defendant State Street Corporation is a Massachusetts corporation with offices in Boston, Suffolk County, Massachusetts. State Street Corporation does business as, among other entities, State Street Global Advisors. SSgA holds itself out as the largest institutional asset manager in the world, with assets under management of approximately $1.4 trillion. It is based in Boston, Massachusetts. (The defendants will be collectively referred to as "State Street.")

## Jurisdiction

4.      Jurisdiction is founded on diversity of citizenship and amount.  Plaintiff is a citizen of the United Kingdom and defendant is a corporation incorporated under the laws of the Commonwealth of Massachusetts having its principal

place of business in Massachusetts. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

5.   Venue is proper in this Court in accordance with 28 U.S.C. § 1391(a)(1) and (2).

## Facts

6.   Mr. Brown began working for State Street in 1995.

7.   Mr. Brown initially served as Managing Director of State Street Global Advisors Limited, then called State Street Global Advisors U.K. Limited, the United Kingdom operations of SSgA.

8.   In 1996, Mr. Brown became Non-U.S. Chief Investment Officer of SSgA and, in 1997, Group Chief Investment Officer of SSgA. Although he maintained his London residence, he was in daily contact with the Boston office and worked approximately one week per month in the United States, in addition to traveling world wide.

9.   In 2000, Mr. Brown was appointed Executive Vice President of State Street Corporation. He received bonuses and benefits in that capacity.

10.   In 2003, State Street offered a Voluntary Separation Plan to many of its employees and an enhanced Executive Voluntary Separation Plan to Executive Vice Presidents as an inducement to accept early retirement. (Both plans are collectively referred to as "VSP").

11.   An unexpectedly large number of employees opted for early retirement under this program, including at least two of the four senior managers at SSgA. As a result, State Street became concerned that it would lose all senior management at SSgA, including Mr. Brown.

12.   In response to this concern and at Mr. Brown's suggestion, at a meeting in Boston in or about June 2003, David Spina, Chairman and Chief Executive Officer of State Street Corporation, offered a modified VSP package to Mr. Brown and another senior SSgA manager, SSgA's Chief Executive Officer, if they would agree not to leave the company in the immediate future but, instead, remain active as leaders of SSgA. Mr. Spina proposed extending the time in which Mr. Brown could opt for the VSP package up to age 55, rather than the brief opt-in period then available for other State Street employees. (This agreement will be collectively referred to as Mr. Spina's "Commitment"). Mr. Brown was 50 years old at that time.

13.   Mr. Brown accepted Mr. Spina's offer.

14.   In reliance on Mr. Spina's Commitment to extend his eligibility for the VSP to age 55, Mr. Brown continued to work for SSgA and to devote his time and energies to the company's best interests. Mr. Brown chose not to pursue potential employment with other firms in reliance on Mr. Spina's

commitment to extend the VSP option to him and otherwise relied to his detriment on Mr. Spina's promise.

15.  On June 10, 2004, Mr. Brown wrote to Mr. Spina memorializing the terms of the VSP Commitment.

16.  On June 15, 2004, Mr. Spina replied to Mr. Brown, affirming the Commitment and telling Mr. Brown that he would inform State Street's Executive Compensation Committee of its Board of Directors ("ECC") about this Commitment at its meeting the following day, "so I will get it on the record." Mr. Spina's last day with State Street was to be June 30, 2004.

17.  At its June 16, 2004 meeting, Mr. Spina informed the ECC of the Commitment he made to Mr. Brown.

18.  The ECC took no action at that June 16, 2004 meeting to deny or repudiate Mr. Spina's commitment to Mr. Brown.

19.  State Street did not inform Mr. Brown following that June 16, 2004 meeting that it repudiated Mr. Spina's commitment. Similarly, State Street did not inform Mr. Brown following that June 16, 2004 meeting that Mr. Spina lacked authority to enter into such a Commitment.

20.  Mr. Spina memorialized his Commitment to Mr. Brown in a letter dated June 30, 2004 to the Chairman of the ECC. In that letter Mr. Spina specifically informed the ECC that he had made a "commitment" to Mr.

Brown and Tim Harbert, SSgA chairman, that "[i]n exchange for their continued commitment to remain active as leaders of SSgA, State Street Corporation would hold available for them the same separation package the company was offering U.S. employees under what is known as the Voluntary Separation Program (VSP)" up to age 55.

21.  Mr. Spina sent copies of that June 30, 2004 letter to Mr. Harbert and Mr. Brown.

22.  The ECC did not deny or repudiate Mr. Spina's Commitment to Mr. Brown following that June 30, 2004 letter.

23.  State Street did not inform Mr. Brown following that June 30, 2004 letter that it repudiated Mr. Spina's commitment. Similarly, State Street did not inform Mr. Brown following that June 30, 2004 letter that Mr. Spina lacked authority to enter into such a commitment.

24.  Mr. Spina was replaced as Chairman and Chief Executive Officer by Ronald Logue on July 1, 2004. Shortly after assuming that position, Mr. Logue was informed about Mr. Spina's Commitment to Mr. Brown.

25.  After learning of Mr. Spina's Commitment, Mr. Logue did not inform Mr. Brown that State Street repudiated Mr. Spina's Commitment. Similarly, Mr. Logue did not inform Mr. Brown that Mr. Spina lacked authority to enter into such a Commitment.

26.    At the ECC's September 15, 2004 meeting, Luis J. de Ocejo, State Street's Senior Vice President for Human Resources, presented detailed information to the ECC concerning what he termed Mr. Spina's "commitment" to Mr. Brown, together with a calculation of the value of those benefits at more than $5 million.

27.    The ECC took no vote at that September 15, 2004 meeting to deny or repudiate Mr. Spina's Commitment to Mr. Brown.

28.    State Street did not inform Mr. Brown following that September 15, 2004 meeting that it repudiated Mr. Spina's Commitment. Similarly, State Street did not inform Mr. Brown following that September 15, 2004 meeting that Mr. Spina lacked authority to enter into such a Commitment.

29.    On January 13, 2004, Mr. Logue affirmed to Mr. Brown that Mr. Brown was eligible for a modified VSP package. Similarly, Mr. de Ocejo also confirmed Mr. Brown's entitlement to VSP benefits and assisted in calculating the value of those benefits.

30.    At no time prior to March 11, 2005 did State Street inform Mr. Brown that Mr. Spina lacked authority to enter into the Commitment described above.

31.    At no time prior to March 11, 2005 did State Street inform Mr. Brown that it repudiated the Commitment described above.

32.    At no time prior to March 11, 2005 did the ECC or State Street's Board of Directors vote to repudiate or deny the Commitment described above.

33.    On March 11, 2005, Mr. Brown notified Mr. Logue that he was electing to exercise his rights under the VSP pursuant to Mr. Spina's Commitment.

34.    In response to this notification, State Street terminated Mr. Brown's employment and denied that he was entitled to any VSP benefits. State Street has refused to provide Mr. Brown with any of the benefits of the VSP program or otherwise to comply with Mr. Spina's Commitment.

## COUNT ONE
### Breach Of Contract

The plaintiff repeats and realleges the foregoing.

35.    Mr. Spina had actual authority to commit State Street to the modified VSP benefits agreement he offered to Mr. Brown and that Mr. Brown accepted.

36.    In addition, Mr. Spina had apparent authority to commit State Street to the modified VSP benefits agreement he offered to Mr. Brown and that Mr. Brown accepted. Mr. Brown reasonably believed Mr. Spina had authority to enter into the agreement on behalf of State Street.

37.    Mr. Spina's offer of the modified VSP benefits to Mr. Brown in return for Mr. Brown's commitment to remain an active leader of SSgA and Mr. Brown's acceptance of that offer constituted an offer and acceptance such that a contract was created between Mr. Brown and State Street.

38.   Mr. Brown continued to work for State Street in accordance with the terms of that contract and his other contractual relationships with State Street and its subsidiaries.

39.   State Street breached this contract by failing to provide Mr. Brown with the VSP benefits called for by this contract.

## COUNT TWO
### Ratification
The plaintiff repeats and realleges the foregoing.

40.   By the above conduct State Street ratified Mr. Spina's Commitment to Mr. Brown and was bound by the terms of that agreement.

41.   State Street breached the Commitment made to Mr. Brown.

## COUNT THREE
### Detrimental Reliance, Promissory Estoppel

The plaintiff repeats and realleges the foregoing.

42.   State Street reasonably expected the above promises and statements by Mr. Spina to induce Mr. Brown to continue in his employment, to decline other employment prospects and to accept Mr. Spina's offer in regard to the modified terms of the VSP package.

43.   Mr. Brown relied to his detriment on Mr. Spina's promises and representations. Such reliance was reasonable in the circumstances. He continued his employment with State Street. He chose not to follow up on potentially lucrative alternative employment prospects from time to time and

he devoted thousands of hours both at home and far from home to State Street's interests.

## COUNT FOUR
### Breach of covenant of good faith and fair dealing

The plaintiff repeats and realleges the foregoing.

44.    Mr. Brown performed all duties required of him to receive the benefits to which Mr. Spina committed.

45.    State Street discharged Mr. Brown in an attempt to avoid paying him the VSP benefits Mr. Spina promised would be paid.

46.    By all the above conduct the defendants breached the covenant of good faith and fair dealing implied in their employment contract with the plaintiff.

47.    WHEREFORE, the plaintiff demands judgment against the defendants  as follows:

   a.    For the full amount of all past, present and future benefits due to him pursuant to the VSP and Mr. Spina's Commitment and all other benefit plans in which he is entitled to participate.

   b.    For the full amount of his damages.

   c.    A declaratory judgment stating Mr. Brown's rights to receive all benefits due to him pursuant to the VSP.

d.    For the full amount of his attorneys fees and costs in this action,

pursuant to Mass. G.L. c. 231 § 6F and otherwise.

e.    Prejudgment interest and costs in this action.

f.    Such other relief as this Court deems just.


**Jury demand** – The plaintiff demands a jury trial.


Alan Brown, plaintiff
By his attorneys,

/s/ Harvey A. Schwartz
HARVEY A. SCHWARTZ
  BBO. # 448080
LAURIE A. FRANKL
  BBO # # 647181
Rodgers, Powers & Schwartz
18 Tremont Street
Boston, MA 02108
(617) 742-7010