UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **ALAN BROWN** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **C.A. No. 05-11178-NG** |
| **STATE STREET CORPORATION,** | ) | |
| **STATE and STREET GLOBAL** | ) | |
| **ADVISORS,** | ) | |
| **Defendants** | ) | |

**PLAINTIFF'S <u>AMENDED</u> OPPOSITION
TO DEFENDANTS' MOTION
TO COMPEL PRODUCTION OF DOCUMENTS**

Having failed in its efforts to obtain documents from the plaintiff's present employer, Schroders Investment Management Limited, concerning his post-State Street dealings there – this Court substantially denied State Street's request for such material made in its Motion To Issue A Letter Of Request For International Judicial Assistance (United Kingdom) To Compel The Production Of Documents From Schroder Investment Management Limited (Docket No. 23) – State Street seeks to compel the plaintiff to produce the same documents. This Court found that the requested documents are irrelevant to the present lawsuit when they were sought from Schroders. Memorandum and Order of March 20, 2006, Docket No. 27, pp. 7-8. The plaintiff conformed his response to the document request at issue to the relevancy standards set by the Court in that March 20, 2006 Order. Now, the

Court should similarly find the requested documents to be irrelevant when they are sought directly from the plaintiff.[1]

## Facts at issue

The plaintiff, Alan Brown, was chief investment officer of State Street's subsidiary, State Street Global Advisors. State Street offered an extremely lucrative early retirement incentive program, called a Voluntary Separation Program or VSP, to its U.S. employees in the Spring of 2003. The VSP was not originally offered to Brown, who is British.  Brown met with State Street's then-Chief Executive Officer, David Spina. According to a letter Spina wrote to the bank's Executive Compensation Committee, to induce Brown to remain at SSgA at a time when many of its leaders were accepting the VSP, Spina made an "oral commitment" to Brown "to hold available to [him] the same separation package the company was offering U.S. employees under what is known as the Voluntary Separation Program (VSP)." Spina's offer would expire when Brown, who was 50 years old at the time, reached age 55.

In reliance on that promise to hold the VSP available to him, Brown remained at State Street until March 11, 2005, at which time he wrote to Ron Logue, Spina's successor, and stated he was exercising his VSP rights. State Street

---

[1]  As a preliminary matter, the defendants' motion to compel should be denied because it fails to comply with L.R. 37.1, Discovery Disputes, in that it fails to state the plaintiff's response to each document request, as required by L.R. 37.1(b)(4).

denied that Brown was entitled to any benefits and treated his March 11 letter as a voluntary resignation. State Street told Brown his "voluntary resignation from employment with State Street" would take effect March 18, 2005. He was paid sixty days salary, as required by his written contract if the company terminated him without cause, but not required if Brown himself resigned. This lawsuit resulted.

Eventually, Brown was hired by a London investment management firm, Schroders, as its chief investment officer. He signed a contract with Schroders on May 17, 2005.

Brown's amended complaint brings claims for breach of contract, ratification, detrimental reliance, promissory estoppel, and breach of the covenant of good faith and fair dealing[2].

## The Schroders motion

During discovery, State Street asked this Court to issue a Letter of Request for International Judicial Assistance, seeking to compel Schroders to produce certain documents. Many of the documents sought from Schroders are identical to those presently sought from Brown himself. This Court, in its March 20, 2006 Order on that Schroders motion, set strict limits as to what documents were relevant to the present case, allowing production of those, and what documents

---

[2]  Brown voluntarily dropped an ERISA claim made in his original complaint.

were not relevant, denying production of those.[3] Of greatest significance to the present dispute, the Court set a cut-off date of the period "on and around March 11, 2005" to determine which documents were relevant. In fact, the court ordered the time period for the requested documents to be changed from "up to May 11, 2005" to "March 11, 2005." Order at p. 8.

Despite this Court's finding that documents after March 11, 2005 are irrelevant to the present lawsuit, State Street demanded that Brown himself produce documents from the March 11 through May 17, 2005 period. Brown responded to the document requests in conformance to the Court's earlier determination of relevance. He agreed to produce documents through March 11, 2005, the last day he actually worked for State Street. He declined to produce documents concerning his activities after he left State Street or before joining the bank.

### The specific document requests, and responses, at issue

State Street challenges Brown's responses to document requests Nos. 1, 2, 9, 10 and 11. Those requests, Brown's responses to the requests and a discussion of why Brown's responses were proper, follows.

### Request No. 1
**All communications through May 17, 2005, between you and Schroders.**

---

[3] For the Court's convenience, the list of documents sought from Schroders is attached as Exhibit A and the Court's Order is attached as Exhibit B.

<u>Response</u>: The plaintiff objects to this request to the extent that it seeks documents created after March 11, 2005. Subject to that objection, the plaintiff has no responsive documents in his custody, possession or control created prior to or on or about March 11, 2005.

<u>Discussion</u>:  This request is the flip side of State Street's Request No. 6 to Schroders, which sought "All communications from January 1, 2003, to May 31, 2005 between you and Brown." This Court's March 20, 2006 Order required, "For Request No. 6, the defendants must replace 'May 31, 2005' with 'March 11, 2005.'" Order at p. 8. Brown took the same position in his response to the document request, objecting to the production of communications between himself and Schroders after March 11, 2005 and stating that he had no such communications prior to or "about" that date. Similarly, Schroders had no documents concerning communications with Brown in the period prior to or around his departure from State Street. Because Brown's communications with Schroders **after** he sought to exercise his VSP benefits were found to be irrelevant to the present lawsuit, they are not subject to discovery.

**Request No. 2**
**All communications between you and any headhunter, recruiter, executive search firm or employment consultant**.

<u>Response</u>: The plaintiff objects to this request to the extent that it seeks documents created before April 2003 and after March 11, 2005. Subject to that objection, the plaintiff has no responsive documents in his custody, possession or control created between April 1, 2003 and March 11, 2005.

Discussion: Brown's efforts to find new employment after leaving State Street are irrelevant to the present action. There is no dispute but that State Street treated Brown's March 11, 2005 letter as a voluntary resignation. Brown was free to seek new employment once he was notified of that treatment. Any such efforts can have no relation to whether or not Spina made the commitment to extend VSP benefits, whether or not Spina had authority to do so, whether or not State Street's Board of Directors ratified Spina's actions or whether or not State Street acted unfairly in doing so. There is no question of mitigation of damages in this case since Brown is not claiming any lost salary after March 11 in this Court. His efforts to find new employment are irrelevant to the claims in this case. Brown agreed to produce any documents concerning contacts with headhunters before March 11, 2005, and stated that he has no such documents.

**Request No. 9**
**All notes, reports or transcripts of any conversation or communication between you and any of the following individuals: Timothy Harbert, John Snow, John Serhant, David Spina, Ronald Logue, Robert Weissman, Mitchell Shames, William Hunt, John Marrs, Luis de Ocejo, Boon Ooi, Peter Leahy, Trevor Lukes, John Towers, Thomas McCrossan, Charles Cutrell, Shawn Johnson, Nicholas Lopardo, any employee or agent of Spencer Stuart, and any employee or agent of The Hay Group or Hay Acquisition Company, Inc.**

Response: The plaintiff objects to this request to the extent that it seeks documents created before April 2003 and after March 11, 2005 and to the extent that it seeks documents concerning communications and conversations that are irrelevant to the matters at issue. Subject to that objection, the plaintiff has no responsive documents in his possession, custody or control that have not been previously produced.

Discussion: This request, unlimited as to time or subject matter, is unduly burdensome and goes well beyond the limits of discovery. Brown worked with some of the listed persons on a daily basis. Documents concerning work-related issues unrelated to the case at hand are irrelevant, and compelling Brown to search for them is unduly burdensome. By seeking to compel production of documents concerning conversations unrelated to these events, or conversations that took place long after the events at issue, State Street seeks clearly irrelevant material. Brown limited his response to the relevant time period – from the approximate time of his 2003 conversation with Spina up to his March 11, 2005 letter to Logue – and to the events at issue. Brown has already produced numerous emails and notes of conversations, including with some of the people listed in this request. Subject to the limitations in his answer as to subject matter and dates, Brown stated that has no documents that have not been previously produced.

**Request No. 10**
**All documents concerning any benefit plan, pension plan or retirement plan of which you are a participant or have been a participant.**

Response: The plaintiff objects to this request to the extent that it is unlimited in time and thus seeks documents that are neither relevant nor likely to lead to the discovery of relevant information. Subject to that objection the plaintiff will produce responsive documents for the period April 1, 2003 through March 11, 2005.

See discussion below.

**Request No. 11**
**All documents concerning any benefit or compensation you receive or have received in lieu of participating in any benefit plan, pension plan or retirement plan.**

Response: The plaintiff objects to this request to the extent that it is unlimited in time and thus seeks documents that are neither relevant nor likely to lead to the discovery of relevant information. The plaintiff further objects to the extent that all compensation records from the plaintiff's employment with the defendant are already in the defendant's possession and the production of those records by the plaintiff would be less burdensome to the defendant than to the plaintiff. Subject to that objection the plaintiff produces responsive documents for the period April 1, 2003 through March 11, 2005.

Discussion: Brown agreed to produce responsive documents concerning his State Street pensions and payments in lieu of pension. He objected to producing pension documents from prior and subsequent employers. Brown did not participate directly in any State Street pension plan. Instead, he was paid a salary supplement in lieu of pension plan participation, under the theory that he would use those supplementary payments to maintain a private retirement plan for himself. State Street's payments to Brown in lieu of a pension plan are relevant because they would offset Brown's entitlement to payments under State Street's Supplemental Executive Retirement Plan (called SERP), payments to which he would be entitled if he were eligible for the VSP.  Boon Ooi, State Street's director of Compensation and Benefits, testified how he calculated the amount of Brown's SERP entitlement. This value, for Brown and for all other

employees entitled to participate in the SERP under the VSP, was based on the employee's years of service and salary level. The pension amount was then reduced by the employee's pension received under State Street's general pension plan. For Brown, since he received payments in lieu of pension contributions, the offset was based on the annuity value of those "in lieu of" payments. When calculating Brown's SERP level in specific and when calculating SERP entitlements for executives under the VSP, State Street included as an offset only the employee's entitlement under other State Street pension plans and ignored any pensions the employee might have under plans provided by other employers. See Exhibit C, deposition testimony of Boon Ooi. As a result, the documents that are relevant to Brown's pension calculation are those relating to the SERP and payments made to him by State Street in lieu of general pension contributions. Obviously, State Street already has all records concerning its payments to Brown made in lieu of pension plan participation. Many of these records have been produced by State Street. There is no need for Brown to return to State Street what it has produced to him. Any such pension or "in lieu of pension" payments Brown received from subsequent employers, after leaving State Street, are irrelevant to calculate what State Street owed to him as of March 11, 2005 if he were entitled to VSP benefits. To the same

extent, any such monies he may have received from other employers prior to joining State Street are irrelevant because State Street did not utilize such prior employer pensions as an offset to SERP entitlement. Brown has agreed to produce all such relevant documents in his possession not already in State Street's possession.

## Conclusion

Just as this Court found in regard to State Street's attempted discovery from Schroders that Brown's conduct and communications after he left State Street are irrelevant to the present action, this Court should now find that the same documents are irrelevant when sought from Brown himself. Brown has freely consented to the production of all relevant documents in existence during his employment with State Street. What he did after leaving State Street while working for one of its competitors is irrelevant to the present action.

The motion to compel should be denied and Brown should be awarded his costs and fees in defending this motion.

Alan Brown, plaintiff
By his attorneys,

/s/ Harvey A. Schwartz
HARVEY A. SCHWARTZ
  BBO. # 448080
Rodgers, Powers & Schwartz
18 Tremont Street
Boston, MA 02108
(617) 742-7010

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------- x

ALAN BROWN,                              :        Case No. 05 Civ. 11178 (NG)
                                         :
                    Plaintiff,           :
                                         :
        -against-                        :
                                         :
STATE STREET CORPORATION                 :
and STATE STREET GLOBAL                  :
ADVISORS,                                :
                                         :
                    Defendants.          :

------------------------------------------------------- x

## DEFENDANTS STATE STREET CORPORATION'S AND STATE STREET GLOBAL ADVISOR'S MOTION TO ISSUE A LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (UNITED KINGDOM) TO COMPEL THE PRODUCTION OF DOCUMENTS FROM SCHRODER INVESTMENT MANAGEMENT LIMITED

Defendants State Street Corporation (the "Corporation") and State Street Global

Advisors ("SSgA") (collectively "State Street"), by their undersigned counsel, hereby move the

Court for an Order (attached as Exhibit 1) granting this motion and issuing a Letter of Request

(attached as Exhibit 2) requesting international judicial assistance in the United Kingdom to take

discovery in this case, pursuant to Fed. R. Civ. P. 45.  By this motion, State Street seeks the

production of documents from Schroder Investment Management Limited ("Schroders"), the

current employer of plaintiff Alan Brown ("Brown").

State Street believes that Schroders may have information relevant to this

litigation.  For example, Brown, a former officer of SSgA, claims that State Street wrongfully

terminated his employment with SSgA in order to prevent him from receiving enhanced

severance and pension benefits.  This claim depends entirely on his allegation that State Street

fired him.  State Street contends that he quit.  As such, information concerning when and how

Schroders first contacted Brown will be relevant to resolving this factual dispute. Additionally, State Street seeks to investigate whether Schroders has agreed to reimburse Brown for any damages he fails to obtain from State Street. If it has, then Schroders -- and not Brown -- is the real party in interest to this litigation.

Moreover, State Street believes that Schroders is an United Kingdom corporation and that it cannot be compelled to provide evidence in the absence of compliance with the Hague Convention of March 18, 1970, on the Taking of Evidence Abroad in Civil or Commercial Matters.

Accordingly, State Street requests that this Court issue the attached Letter of Request and that the executed Letter be returned to counsel for State Street for delivery to the proper authority in the United Kingdom.

Dated:   New York, New York
         February 22, 2006

                                        Respectfully submitted,

                                        HARE & CHAFFIN


                                        By:  ___/s/ David B. Chaffin_____
                                              David B. Chaffin

                                        160 Federal Street, 23rd Floor
                                        Boston, Massachusetts 02110
                                        (617) 330-5000

                                        *Attorneys for Defendants*
                                        *State Street Corporation*
                                        *and State Street Global Advisors*

OF COUNSEL:

QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP

Peter Calamari (admitted *pro hac vice*)
Rex Lee (admitted *pro hac vice*)

335 Madison Avenue, 17th Floor
New York, New York 10017
(212) 702-8100

## Certificate of Consultation

          Pursuant to Local Rule 7.1(a)(2), I certify that counsel have conferred and have

attempted in good faith to resolve or narrow the issues presented by Defendants' Motion to Issue

a Letter of Request for International Judicial Assistance to Compel the Production of Documents

from Schroder Investment Management Limited.

                                        ___/s/ Rex Lee_____  ___
                                           Rex Lee

# CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that on February 22, 2006, I caused to be electronically filed DEFENDANTS STATE STREET CORPORATION'S AND STATE STREET GLOBAL ADVISOR'S MOTION TO ISSUE A LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (UNITED KINGDOM) TO COMPEL THE PRODUCTION OF DOCUMENTS FROM SCHRODER INVESTMENT MANAGEMENT LIMITED, including all exhibits thereto, with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Harvey A. Schwartz, Esq.
Rogers, Powers & Schwartz
18 Tremont Street
Boston, MA 02108
(617) 742-7010

Attorneys for Plaintiff Alan Brown

Dated:  New York, New York
        February 22, 2006

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

By: ____/s/ Rex Lee_____
        Rex Lee

335 Madison Avenue, 17th Floor
New York, New York 10017
(212) 702-8100

Attorneys for State Street Corporation
and State Street Global Advisors
*Defendants*

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
-------------------------------------------------------- x
ALAN BROWN,                              :     Case No. 05 Civ. 11178 (NG)
                                         :
                    Plaintiff,           :
                                         :
        -against-                        :
                                         :
STATE STREET CORPORATION                 :
and STATE STREET GLOBAL                  :
ADVISORS,                                :
                                         :
                    Defendants.          :
-------------------------------------------------------- x

## ORDER GRANTING DEFENDANTS' MOTION TO ISSUE
## <u>LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE</u>

AND NOW, this _____ day of _____, 2006, the following is ordered:

Defendants State Street Corporation's and State Street Global Advisors'

(collectively "State Street") motion for a Letter of Request to the appropriate judicial authority in

the United Kingdom to obtain the production of documents from Schroder Investment

Management Limited is granted. The signed Letter of Request with the Seal of the Court is

attached. State Street shall forward the Letter of Request and any and all necessary translations

and copies to the appropriate authorities in the United Kingdom.


Date _____        _____
                               Honorable Nancy Gertner
                               United States District Judge

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
------------------------------------------------------- x
ALAN BROWN,                          :      Case No. 05 Civ. 11178 (NG)
                                     :
                  Plaintiff,         :
                                     :
          -against-                  :
                                     :
STATE STREET CORPORATION             :
and STATE STREET GLOBAL              :
ADVISORS,                            :
                                     :
                  Defendants.        :
------------------------------------------------------- x

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
## PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE
## TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS
## (SCHRODER INVESTMENT MANAGEMENT LIMITED)

The United States District Court for the District of Massachusetts presents its

compliments to the appropriate judicial authority of the United Kingdom and requests

international judicial assistance to obtain documentary evidence to be used in a civil proceeding

before this Court in the above captioned matter.  This Court has determined that it would further

the interests of justice if the entity named below provide those documents, identified on Schedule

A (attached hereto), that are relevant to the issues of this case.

**IDENTITY AND ADDRESS OF THE APPLICANT:**

> Honorable Nancy Gertner
> United States District Judge
> The United States District Court
> for the District of Massachusetts
> 1 Courthouse Way - Suite 4130
> Boston, Massachusetts 02210
> UNITED STATES OF AMERICA

**CENTRAL AUTHORITY OF THE RECEIVING STATE:**

> Foreign and Commonwealth Office
> Clive House Petty France
> London SW1
> UNITED KINGDOM

**ENTITY FROM WHOM EVIDENCE IS REQUESTED:**

> Schroder Investment Management Limited
> 31 Gresham Street
> London EC2V 7QA
> UNITED KINGDOM

**PARTIES AND THEIR REPRESENTATIVES:**

| Party | Representative |
|---|---|
| Alan Brown<br>*Plaintiff* | Harvey A. Schwartz<br>RODGERS, POWERS & SCHWARTZ<br>18 Tremont Street<br>Boston, Massachusetts 02108<br>United States of America |
| State Street Corporation<br>and State Street Global Advisors<br>*Defendants*<br><br>State Street Financial Center<br>One Lincoln Street<br>Boston, Massachusetts 02111<br>United States of America | David B. Chaffin<br>HARE & CHAFFIN<br>160 Federal Street, 23rd Floor<br>Boston, Massachusetts 02110<br>United States of America<br><br>Peter Calamari<br>Rex Lee<br>QUINN EMANUEL URQUHART OLIVER<br>& HEDGES, LLP<br>335 Madison Avenue, 17th Floor<br>New York, New York 10017<br>United States of America |

**THE NATURE OF THE PROCEEDINGS:**

Plaintiff Alan Brown is the former Chief Investment Officer for State Street

Global Advisors ("SSgA") and a former Executive Vice President for State Street Corporation

(the "Corporation"). In March 2005, he left State Street. On June 7, 2005, he filed this lawsuit against State Street, alleging that (i) the Corporation's former Chief Executive Officer, David Spina, promised him enhanced pension and severance benefits, (ii) he stayed with State Street -- when he could have left -- in reliance on this promise and (iii) State Street wrongfully terminated his employment so that it would not have to fulfill this promise. State Street contends that (i) Mr. Brown is not entitled to these benefits and (ii) he quit voluntarily in order to pursue other business opportunities.

**SUBJECT MATTER AND RELEVANCE OF THIS REQUEST:**

Less than two months after Mr. Brown left State Street, he joined Schroder Investment Management Limited ("Schroders") as its Head of Investment. Consequently, Schroders may have discoverable information that is relevant to this case. For example, State Street believes Schroders may have agreed to reimburse Mr. Brown for any damages he fails to obtain from State Street. To the extent that it has, Schroders -- and not Mr. Brown -- would be the real party in interest to this case. Moreover, several of Mr. Brown's claims depend on his allegation that State Street fired him. State Street contends that Mr. Brown quit. As such, when and how Schroders first contacted Mr. Brown is relevant to resolving this factual dispute.

**EVIDENCE TO BE OBTAINED:**

In view of the foregoing and in the interests of justice, this Court requests that you issue an order, in accordance with the laws and procedures of the courts of the United Kingdom for the acquisition of evidence for trial, and summon Schroders to produce those documents identified in Schedule A, which is attached to this request. Moreover, this request does not require Schroders to (a) state what documents in its possession, custody or power are relevant to

3

this litigation or (b) produce any documents other than the particular documents specified in Schedule A.

**SCHEDULING AND OTHER SPECIFIC REQUESTS:**

1.  This Court respectfully requests that an United Kingdom authority compel Schroders to produce the documents identified in Schedule A no later than thirty (30) days after the authority executes this Letter of Request. This Court also requests that the United Kingdom authority instruct Schroders to produce the documents to the law firm of Quinn Emanuel Urquhart Oliver & Hedges, LLP, located at 335 Madison Avenue, 17th Floor, New York, New York 10017.

2.  For the benefit of the parties, this Court respectfully requests that you notify (i) this Court, (ii) counsel for State Street and (iii) counsel for Mr. Brown of the date and time this Letter of Request is executed and Schedule A is served on Schroders.

3.  For the benefit of the parties, this Court also requests that the production of documents be taken in accordance with the Federal Rules of Civil Procedure of the United States of America, except to the extent such procedure is incompatible with the internal laws of the United Kingdom.

When required, this Court shall provide similar assistance as requested herein, to the appropriate judicial authorities of the United Kingdom.

Defendants State Street Corporation and State Street Global Advisors stand ready and willing to reimburse the appropriate judicial authorities of the United Kingdom for all costs incurred in executing this Court's request for international judicial assistance.


WITNESS, the Honorable Nancy Gertner, Judge of the United States District Court for the District of Massachusetts, this _____ day of _____, 2006.


                                                _____

                                                Honorable Nancy Gertner
                                                United States District Judge
                                                The United States District Court
                                                for the District of Massachusetts
                                                1 Courthouse Way - Suite 4130
                                                Boston, Massachusetts 02210
                                                United States of America

[seal of court]

# SCHEDULE A

## SCHEDULE A

## DEFINITIONS

As used in these requests for documents, the following terms shall have the meanings indicated below:

1.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each request all responses that might otherwise be construed to be outside the scope.

2.     "Any" shall include "all" and "all" shall include "any."

3.     "Brown" shall mean plaintiff Alan Brown, together with his current and former agents, representatives and other natural persons or entities acting on his behalf.

4.     "Brown's employment agreement" shall mean the employment agreement between Brown and State Street Global Advisors U.K. Limited, dated December 7, 1994 and effective January 16, 1995.

5.     "Brown's March 11, 2005 resignation letter" shall mean the letter dated March 11, 2005 that Brown sent to Ronald E. Logue and copied to Luis de Ocejo, including any drafts of this letter.

6.     "Communication" shall mean any disclosure, transfer or exchange of information, in the form of facts, ideas, inquiries or otherwise, between two or more persons, whether orally or in writing, including any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, facsimile, electronic mail, instant messaging or any other electronic or other medium, whether written, audio or video.

7.    "Concerning" shall mean relating to, referring to, describing, evidencing, memorializing, supporting, substantiating or constituting.

8.    "Document" has the same meaning as the term is defined in Fed. R. Civ. P. 34(a) and as the term "writing" is defined in Fed. R. Evid. 1001, and shall include within its meaning any and all papers, videotapes or video recordings, photographs, films, x-rays, recordings, memoranda, books, records, accounts, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications of any nature, recordings of conversations either in writing or by means of any mechanical or electrical recording device, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs and any differing versions of the foregoing whether denominated formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including handwritten notations or other written or printed matter of any nature, from the original.  The foregoing specifically includes information stored in any form, including electronic form, on a computer or in a computer database or otherwise, including electronic mail.

9.    "Including" shall mean including but not by way of limitation.

10.    "Person" or "individual" shall mean any natural person or any business, legal or governmental entity or association.

11.    "Schroders," "you," or "your" shall mean Schroder Investment Management Limited, together with its current and former partners, directors, officers,

2

employees, agents, representatives, affiliates, subsidiaries, business units, predecessors, successors, parent companies and other natural persons or entities acting on its behalf.

12.    "Spina" shall mean David A. Spina, former Chairman and Chief Executive Officer of State Street, together with his current and former agents, representatives and other natural persons or entities acting on his behalf.

13.    "SSgA" shall mean the worldwide State Street Global Advisors business unit of State Street, together with its current and former partners, directors, officers, employees, agents, representatives, affiliates, subsidiaries, business units, predecessors, successors and other natural persons or entities acting on its behalf.

14.    "State Street" shall mean State Street Corporation, together with its current and former partners, directors, officers, employees, agents, representatives, affiliates, subsidiaries, business units, predecessors, successors and other natural persons or entities acting on its behalf.

15.    "State Street Bank" shall mean State Street Bank and Trust Company, together with its current and former partners, directors, officers, employees, agents, representatives, affiliates, subsidiaries, business units, predecessors, successors and other natural persons or entities acting on its behalf.

16.    "VSP" shall mean the Voluntary Separation Program and the Executive Voluntary Separation Program -- early retirement programs initiated by State Street in 2003.

17.    The use of any pronoun herein shall include the masculine, the feminine and the neuter.

3

18.    The use of any singular construction shall include the plural, and the use of the plural shall include the singular.

19.    The use of any capitalized word shall include the same word uncapitalized, and the use of any uncapitalized word shall include the same word capitalized.

### INSTRUCTIONS

1.    In response to the requests for production of documents below, you are to produce all requested documents in your possession, custody or control, whether or not the production of such documents requires that they be obtained from one or more of your employees, managers, partners, agents, independent contractors, consultants, attorneys, subsidiaries or any other persons.

2.    You are to produce the documents requested herein either in the original file or organizational system in which they are customarily maintained or organized so as to correspond to the specific numbered requests below.

3.    If you are unable to produce any document requested herein because such document is no longer in existence or no longer within your possession, custody or control, you are to so state and identify each such document by describing its nature and listing its date, author(s) and recipient(s).  In addition, you are to describe the circumstances under which each such document ceased to exist or passed from your possession, custody or control and identify each person known or reasonably believed to have possession, custody or control of such document by listing such person's name, business affiliation, address and telephone number.

4

4. In the event that any document called for by these requests is withheld on the basis of a claim of privilege or immunity from discovery, that document must be identified by stating: (i) the identity of any addressor and addressee; (ii) any indicated or blind copy; (iii) the document's date, subject matter (without revealing the content as to which the privilege is claimed), number of pages and any attachments or appendices; (iv) the identity of each person to whom the document was distributed, shown or explained; (v) the identity of its present custodian; and (vi) the nature of the privilege or immunity asserted.

5. This request for production of documents is continuing in nature and requires prompt production of supplemental materials if you obtain additional responsive documents or things or if additional documents or things become responsive after the time of your initial response, to the full extent provided by Fed. R. Civ. P. 26(e).

6. These requests encompass all specifically requested items, as well as all drafts and any non-identical copies of specifically requested items or drafts.  If a request is silent as to the time period for which production of documents is sought, production shall be made of all documents in your possession, custody or control at any time during the period of January 1, 2003, to the present.

## REQUESTS FOR PRODUCTION

**Request No. 1**

All documents concerning any agreement, contract or term sheet, including any drafts of or exhibits or supplements to such agreement, contract or term sheet, between Brown, on the one hand, and (a) State Street, (b) State Street Bank or (c) SSgA, on the other hand.

**Request No. 2**

 All documents concerning the VSP.

**Request No. 3**

 All communications between Brown, on the one hand, and (a) State Street, (b) State Street Bank or (c) SSgA, on the other hand.

**Request No. 4**

 All communications between Brown and Spina.

**Request No. 5**

 All communications between you and Spina.

**Request No. 6**

 All communications from January 1, 2003, to May 31, 2005, between you and Brown.

**Request No. 7**

 All documents concerning how you first came into contact with Brown.

**Request No. 8**

 All documents concerning Brown's appointment as your Head of Investment.

**Request No. 9**

 All documents concerning any agreement, contract or term sheet, including any drafts of or exhibits or supplements to such agreement, contract or term sheet, between you and Brown.

**Request No. 10**

      All documents concerning any reimbursement, compensation or indemnification you will provide Brown in connection with the litigation captioned *Brown v. State Street Corporation and State Street Global Advisors*, Case No. 1:05-cv-11178, and filed in the United States District Court for the District of Massachusetts in the United States of America.

**Request No. 11**

      All documents concerning the termination of Brown's employment with SSgA.

**Request No. 12**

      All documents concerning Brown's March 11, 2005 resignation letter.

**Request No. 13**

      All documents concerning the reasons why Brown left his positions as Chief Investment Officer for SSgA and Executive Vice President for State Street.

**Request No. 14**

      All documents concerning the possibility in 2005 that Brown would succeed Timothy B. Harbert as either Chairman or Chief Executive Officer of SSgA.

**Request No. 15**

      All documents concerning William W. Hunt's appointment as SSgA's Chairman and Chief Executive Officer.

**Request No. 16**

All communications on or after March 11, 2005, between Brown, on the one hand, and any current or former client of (a) State Street, (b) State Street Bank or (c) SSgA, on the other hand.

**Request No. 17**

All documents concerning any effort made by Brown to solicit business of a type that is competitive with or similar to the business of (a) State Street, (b) State Street Bank or (c) SSgA from any current or former client of these entities.

**Request No. 18**

All communications on or after March 11, 2005, between Brown, on the one hand, and any current or former employee, officer or director of (a) State Street, (b) State Street Bank or (c) SSgA, on the other hand.

**Request No. 19**

All documents concerning any effort made by Brown to solicit any current or former employee, officer or director of (a) State Street, (b) State Street Bank or (c) SSgA.

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN BROWN,                              ) | |
|          Plaintiff,                      ) | |
|                                          ) | |
|      v.                                  ) | C.A. No. 05-11178-NG |
|                                          ) | |
| STATE STREET CORPORATION and             ) | |
| STATE STREET GLOBAL ADVISORS,            ) | |
|          Defendants.                     ) | |

GERTNER, D.J.:

### MEMORANDUM & ORDER
**March 20, 2006**

## I.   INTRODUCTION

Before me is the defendants' Motion to Issue a Letter of Request for International Judicial Assistance (United Kingdom) to Compel the Production of Documents from Schroder Investment Management Limited [docket entry # 23].  For the reasons explained below, I **GRANT** the defendants' motion for a letter of request, but **ORDER** the defendants to redraft their Requests for Production.

## II.  FACTUAL BACKGROUND

This case arises under the Employment Retirement Income Security Act ("ERISA").  The plaintiff, Alan Brown, is the former Group Chief Investment Officer and Vice Chairman of State Street Global Advisors and Executive Vice President of State Street Corporation.  His employment by the defendants ended on March 11, 2005.  He now claims that the defendants owe him significant

1

money and benefits as part of their Voluntary Separation Plan,
allegedly guaranteed to Brown by ERISA.

Brown is presently employed in the United Kingdom by
Schroder Investment Management Limited, a competitor of the
defendants.  The defendants, seeking information they assert is
relevant to Brown's claims and their defenses, have moved this
Court to issue a letter of request for judicial assistance in the
United Kingdom.  Such a letter, if approved by the recipient
court in the United Kingdom, would enable the defendants to seek
discovery directly from Schroder.

## III. <u>LEGAL ANALYSIS</u>

In assessing a motion for a letter of request, a court must
answer three questions.  First, what procedural framework
applies?  Second, what factors guide a court's decision whether
to issue a letter of request, and how do those factors bear upon
the case at bar?  Third, who has standing to object to the
issuance of such a letter?

### A.   <u>Procedural Framework</u>

A party to a lawsuit filed in the United States may seek
discovery from an unconsenting witness located in another country
in two ways.  First, if the witness from whom information is
sought is subject to personal jurisdiction and has been served in
the United States, the Federal Rules of Civil Procedure apply and
discovery may proceed according to those Rules.  Second, a United

2

States court may apply the Hague Convention on the Taking of
Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555.
The Hague Convention provides an alternative, optional method for
conducting discovery in each of its signatory countries through
the use of a letter of request from a United States court to a
foreign tribunal.  See generally Societe Nationale Industrielle
Aerospatiale v. United States District Court for the Southern
District of Iowa, 482 U.S. 522 (1987).

In the case at bar, the defendants characterize their motion
for a letter of request as brought "pursuant to Fed. R. Civ. P.
45," the Rule that governs subpoenas.  Though this reference to
Rule 45 would seem to place the defendants' request in the first
category described above, there is no evidence that Schroder is
subject to personal jurisdiction in the United States or has been
served with a subpoena here.  Moreover, though the defendants
refer to Rule 45, their motion for a letter of request otherwise
follows the form requirements of the Hague Convention.  I
therefore interpret the defendants' motion for a letter of
request as a motion pursuant to the Hague Convention.

**B.   The Decision to Issue a Letter of Request**

In his Opposition to the defendants' motion, the plaintiff
relies on a list of five factors he asserts are "to be considered
before allowing such discovery [pursuant to a letter of
request]." (Pl's Opp. at 3).  These factors, however, do not

3

determine whether a court should issue a letter of request; they determine how a court should decide between allowing discovery pursuant to the Federal Rules of Civil Procedure or to the Hague Convention.  <u>Societe Nationale Industrielle Aerospatiale</u>, 482 U.S. at 544 n.28.  Because this Court has concluded that the Hague Convention supplies the procedural framework applicable to the present case, the factors upon which the plaintiff relies are not relevant to this Court's analysis.[1]

In fact, the decision whether to issue a letter of request is entirely within the discretion of the district court, as it derives from the court's "inherent" authority.  <u>See</u> <u>DBMS Consultants Ltd. v. Computer Assocs. Int'l, Inc.</u>, 131 F.R.D. 367, 369 (D. Mass. 1990) (citing 28 U.S.C. § 1781(b)(2), which provides for transmittal of letters of request from United States court to foreign tribunals).

Courts examine a variety of factors in determining whether to issue a letter of request.  Their approach is permissive, and is dependent on the circumstances of each case.  Indeed, courts generally grant motions for letters of request unless there is a "good reason" not to.  <u>Zassenhaus v. Evening Star Newspaper Co.</u>,

---

[1] Even if there were a choice between the Federal Rules of Civil Procedure and the Hague Convention in this case, many courts have held that discovery from non-party foreign witnesses should be conducted pursuant to the Hague Convention.  <u>See</u>, <u>e.g.</u>, <u>Abbott Labs v. Teva Pharms. USA, Inc.</u>, No. 02-1512, 2004 U.S. Dist. LEXIS 13480 (D. Del. July 15, 2004) (emphasizing that the witnesses were non-parties, were citizens of France, and did not voluntarily subject themselves to a United States court's jurisdiction).

131 U.S. App. D.C. 384 (D.C. Cir. 1968) (reversing the district court's denial of a letter of request when the evidence sought was central to the case); B & L Drilling Electronics v. Totco, 87 F.R.D. 543, 545 (D. Okla. 1978) ("Ordinarily on a motion for the issuance of a letter rogatory, the Court will not weigh the evidence that is to be adduced by deposition and will not attempt to predict, whether, in fact, the witnesses will be able to give the testimony which is sought."); Elliott Assocs., L.P. v. Republic of Peru, No. 96-7917, No. 96-7916, 1997 U.S. Dist. LEXIS 11185, at *4-*7 (S.D.N.Y. Aug. 1, 1997) (granting a motion for a letter of request where the "liberal discovery provisions of the Federal Rules" would otherwise permit discovery).

The courts that have denied motions for letters of request or limited their scope have pointed to the expense and burden to the non-party witness, the timing of the motion for a letter of request, and the tenuous relationship between the information requested and the facts of the case.

In DBMS, for example, Judge Nelson of the District of Massachusetts considered a motion for a letter of request that would allow a United States party to depose a non-party witness in Australia. The DBMS court ultimately denied permission for an oral deposition due to the expense to and burden on the non-party witness, but issued a letter of request for a deposition upon written questions instead.

5

Likewise, in <u>Szollosy v. Hyatt Corp.</u>, No. 99-870, 2005 U.S.
Dist. LEXIS 28338 (D. Conn. Nov. 15, 2005), the court declined to
issue a letter of request to the Cayman Islands that sought a
video deposition of a non-party witness.  The court held that,
because the motion came on the eve of trial and the party
requesting the letter did not provide any information on Cayman
Islands judicial procedure, the issuance of a letter was not
appropriate.  <u>See</u> <u>also</u> <u>Benton Graphics v. Uddeholm Corp.</u>, 118
F.R.D. 386, 388 (D.N.J. 1987) ("Whether a particular document
request is too burdensome is left to the sound discretion of the
trial court in light of the facts of the case, and the respective
interests of the parties and foreign governments involved.").

In addition to these general considerations of expense,
burden, and timing, a court must also determine whether a letter
of request complies with the Hague Convention's specific
requirements.  A letter of request transmitted pursuant to the
Hague Convention must be addressed to the receiving state's
Central Authority and must specify, inter alia, "(d) the
evidence to be obtained or other judicial act to be performed"
and "(g) the documents or other property, real or personal, to be
inspected."

Letters of request directed to the United Kingdom, as in the
case at bar, may have to meet a higher standard.  The Hague
Convention allows signatory states to restrict pretrial discovery

6

of documents by foreign parties.  The United Kingdom has done so, and permits "pretrial discovery only if each document sought is separately described."  First American Corp. v. Price Waterhouse LLP, 154 F.3d 16, 23 (2d Cir. 1998).  According to one commentator, English courts routinely refuse to execute letters of request that are "fishing" for general pretrial discovery rather than seeking specific documents to be used at trial.  Obtaining Evidence in England for use in Proceedings in the United States of America, LobleSolicitor, available at www.loble.co.uk/obtaining_evidence.htm; but see Gomez v. Banco Bilbao Vizcaya, No. 92-7863, 1993 U.S. Dist. LEXIS 7566, at *16 (D.N.Y. June 7, 1993) ("The emerging view of this exception to discovery is that it applies only to 'requests that lack sufficient specificity or that have not been reviewed for relevancy by the requesting court.'").

In the case at bar, there is no "good reason" to deny the defendants' motion for a letter of request wholesale.  I will, however, exercise my discretion, as did the DBMS court, to minimize the expense to and burden on Schroder, a non-party to this lawsuit and a competitor of the defendants.  To that end, I conclude that Requests No. 2, 4, 5, 11, 13, and 15 - 19 are irrelevant to the present lawsuit, and therefore may not be included in the defendants' letter of request.  The defendants must redraft their remaining Requests for Production as follows.

For Requests No. 1, 3, 9, and 14, the defendants must limit their requests to documents drafted and communications made on or around March 11, 2005, the date of Brown's departure from the defendants' employ.  For Request No. 6, the defendants must replace "May 31, 2005" with "March 11, 2005."  For Requests No. 7 and 8, the defendants must limit the request to the time period prior to March 11, 2005.  Requests No. 10 and 12 are proper as written.

In redrafting, I urge the defendants to be mindful of the restrictions placed on pretrial discovery in the United Kingdom, and to tailor their Requests for Production accordingly.

### C.   **Standing to Object**

A final matter raised by the defendants in support of their motion for a letter of request is that of standing.  The defendants have challenged the plaintiff's ability to object to their motion, contending that Brown has no standing to argue against a discovery request to a third party.  The defendants cite PKFinans Int'l Corp. v. IBJ Schroder Leasing Corp., No. 93-5375, 96-1816, 1996 U.S. Dist. LEXIS 15183, at *3 (S.D.N.Y. Oct. 15, 1996) for this proposition.  "However, in the absence of a claim of privilege, we fail to see how PKFinans has standing to object to discovery sought from a non-party."  Judge Keenan of the Southern District of New York has recently come to the same conclusion in another case, Sahu v. Union Carbide Corp., No. 04-

8825, 2006 U.S. Dist. LEXIS 944 (S.D.N.Y. Jan. 10, 2006)
("Plaintiffs request international assistance in the form of a
Letter Rogatory to obtain documents from a third party.
Defendants make several objections to the request. Absent special
circumstances, however, a party may not seek a protective order
where discovery is sought from a third party. . . The Court is
not aware of any special circumstances in this case. Therefore,
Defendants lack standing to object to the discovery. The Court
will sign the Letter Rogatory."); but see DBMS, 131 F.R.D. 367
(allowing only a deposition upon written questions out of concern
for the burden on and expense to the witness; considering the
defendants' objections regarding burden and expense though the
defendant presumably lacked standing to object).

There is also a clearly established line of cases, however,
that seems to come to the opposite conclusion when the situation
is reversed. These cases hold that, when a United States court
executes a foreign tribunal's letter of request to compel
discovery in this country, the party against whom the requested
information will be used has standing to object. See, e.g.,
Kuwait Inv. Auth. v. Sarrio S.A., 119 F.3d 143, 148 (2d Cir.
1997) ("[P]arties against whom the requested information will be
used may have standing to challenge the lawfulness of discovery
orders directed to third parties."); In re Request for Judicial
Assistance from Seoul Dist. Criminal Court, 555 F.2d 720, 723

(9th Cir. 1977) ("The party against whom requested bank records are to be used has standing to challenge the validity of the order to the bank to produce the records.").

Setting aside this curious conflict in caselaw, this Court concludes that resolving the question of Brown's standing to object is not necessary for a resolution of the question of whether to issue a letter of request.  Even if Brown had no standing to object, or, indeed, if he had standing but did not object, the decision whether to grant the defendants' motion would remain in this Court's discretion.  I would still be obligated to examine the propriety of the defendants' letter of request, inquire into the burden on and expense to Schroder, and determine whether the proposed letter meets the requirements of the Hague Convention.  I have conducted that analysis above, and conclude that there is no "good reason" to deny the defendants' letter of request, modified as I have described herein.

**IV.**   <u>**CONCLUSION**</u>

Defendants' Motion for a Letter of Request [docket entry #23] is **GRANTED**.  The defendants are **ORDERED**, however, to redraft their Requests for Production as described above and resubmit their proposed Letter of Request and Requests for Production to this Court within seven days of the date of this Memorandum & Order.

**SO ORDERED.**

**Dated: March 20, 2006**                <u>**s/ NANCY GERTNER U.S.D.J.**</u>

## <u>EXHIBIT C</u>

Volume: I

Pages: 1-76

Exhibits: 1-12

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

C.A. No. 05-11178-NG

_____
                              |
ALAN BROWN,               |
                              |
    Plaintiff      |
                              |
vs.                        |
                              |
STATE STREET CORPORATION and  |
STATE STREET GLOBAL ADVISORS, |
                              |
    Defendants      |
_____|


Deposition of BOON OOI, a witness called on behalf

of the Plaintiff, pursuant to the Federal Rules of Civil

Procedure, before Virginia Dodge, Registered Professional

Reporter and Notary Public in and for the Commonwealth of

Massachusetts, at the offices of RODGERS, POWERS &

SCHWARTZ, 18 Tremont Street, 5th Floor, Boston,

Massachusetts, commencing at 2:45 p.m. on Tuesday,

June 20, 2006.

1  Q.   Okay.  So the executive -- the EVSP as it was

2  provided to U.S. employees provided for an offset to the

3  executive SERP for payments made under the State Street

4  retirement plan, correct?

5  A.   The State Street qualified and non-qualified plan.

6  For expediency purposes, we did not apply the

7  non-employer -- other employer pensions because this was

8  done in a very short time frame, and that would require us

9  to go out and collect information from everybody.

10      But again, this is just a U.S. focus program.

11  Q.   Yeah.  You've told us that.

12      So you agree that the EVSP as it was offered to

13  State Street employees did not include an offset for prior

14  employer pension plans, correct?

15      MR. CALAMARI:  Objection to form.  The

16      documents speak for themselves.

17  A.   Can you repeat the question?

18  Q.   (By Mr. Schwartz)  Do you agree that the EVSP, as it

19  was offered to State Street employees, did not include an

20  offset to the executive SERP for pension benefits from

21  prior employers?

22       MR. CALAMARI:  Objection to form.

23  A.   The EVSP as offered to U.S. employees does not apply

24  an offset to the executive SERP from other employer plans.


SHEA COURT REPORTING SERVICES
(617) 227-3097