UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------- x
ALAN BROWN,                                             :
                                                        :
              Plaintiff,                 :
                                                        :   Case No. 05 Civ. 11178 (NG)
    -against-                                          :
                                                        :
STATE STREET CORPORATION                                :
and STATE STREET GLOBAL                                 :
ADVISORS,                                               :
                                                        :
             Defendants.                :
------------------------------------------------------- x

# DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF ALLEGEDLY UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

HARE & CHAFFIN
160 Federal Street, 23rd Floor
Boston, MA 02110
(617) 330-5000

Defendants State Street Corporation (the "Corporation") and State Street Global Advisors ("SSgA") (collectively, "State Street") respectfully submit this response to plaintiff Alan Brown's statement of allegedly undisputed material facts pursuant to Local Rule 56.1.[1]

1. State Street does not dispute Alleged Fact No. 1.

2. State Street does not dispute Alleged Fact No. 2.

3. State Street does not dispute Alleged Fact No. 3.

4. State Street does not dispute Alleged Fact No. 4.

5. State Street does not dispute Alleged Fact No. 5. This allegedly undisputed fact, however, is incomplete in that throughout the entirety of his employment at State Street, Brown received his salary from State Street Global Advisors U.K. Limited and only participated in U.K.-based benefit plans. Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 In Support of Their Motion for Summary Judgment ("Defendants' 56.1 Statement") (D.E. 50), ¶¶ 21-22.

6. State Street does not dispute Alleged Fact No. 6.

7. State Street disputes Alleged Fact No. 7. Throughout his employment Brown received his salary from State Street Global Advisors U.K. Limited. *Id.* He never paid U.S. taxes as a result of his salary or bonus compensation, which was approximately half of his total compensation. Declaration of Rex Lee dated October 31, 2006 ("Lee Decl."), ¶ 2, Ex. 49 (Brown Tr. 12:23-13:1); 2003 Compensation Summary (a copy of which is attached as Exhibit 23 to the Declaration of Rex Lee dated September 26, 2006). While he participated in State Street's equity and option plans, typically, he did so pursuant to a subplan applicable to U.K.

---

[1] As an initial matter, State Street objects to Brown's statement of allegedly undisputed facts in that it fails to comply with Local Rule 56.1's mandate of a "concise statement of material facts" to which the moving party contends there is no genuine issue to be tried.

1

employees. Lee Decl., ¶ 3, Ex. 50 (1997 Equity Plan/U.K. Subplan). This allegedly undisputed fact also ignores the fact that each of Brown's compensation agreements were in writing, duly authorized and executed. Defendants' 56.1 Statement, ¶ 27. Otherwise, State Street does not dispute that Brown had a written employment agreement with State Street Global Advisors U.K. Limited or that he received bonus awards in his role as an executive vice president.

8.  State Street does not dispute Alleged Fact No. 8. This allegedly undisputed fact, however, is incomplete for the same reasons as those set forth in State Street's response to No. 5, above. It is further incomplete in that Brown's primary office was State Street Global Advisors U.K. Limited's office in London, England. *Id.*, ¶ 21.

9.  State Street disputes Alleged Fact No. 9. Brown received his salary solely from State Street Global Advisors U.K. Limited, worked primarily in this entity's London office, received awards for his work as a chief investment officer in Europe and never paid income taxes in the United States. *Id.*, ¶¶ 21-22; Lee Decl., ¶ 2, Ex. 49 (Brown Tr. 12:23-13:1; 92:18-24).

10. State Street disputes Alleged Fact No. 10 but does not dispute the allegation that Brown received awards for his work in Europe.

11. State Street disputes Alleged Fact No. 11. State Street conceived and developed the Voluntary Separation Program and the Executive Voluntary Separation Program (collectively, the "VSP") with the goal of reducing its costs solely in the United States. Lee Decl., ¶ 4, Ex. 51 (Spina Tr. 9:5-10:3). Accordingly, the VSP was available only to certain of State Street's U.S. employees and not to its employees generally. *Id.*

12. State Street disputes Alleged Fact No. 12. State Street offered the VSP only to employees who, among other things, (i) had been employed for at least a year, (ii) were paid on State Street's U.S. payroll and (iii) participated in State Street's U.S. benefits plans.

Defendants' 56.1 Statement, ¶ 9; Affidavit of Harvey Schwartz ("Schwartz Aff."), Ex. 2 (de Ocejo Tr. 11:7-12:11). This allegedly undisputed fact also omits the fact that State Street had reserved its right to exclude otherwise eligible employees from participating in the VSP based on its business needs. Defendants' 56.1 Statement, ¶ 12.

13. State Street disputes Alleged Fact No. 13. As set forth above in State Street's response to No. 12, State Street excluded several of its U.S. executive vice presidents. Lee Decl., ¶ 2, Ex. 49 (Brown Tr. 94:12-23).

14. State Street disputes Alleged Fact No. 14. Brown was ineligible for the VSP, in part, because he was not on State Street's U.S. payroll and did not participate in the U.S.-based benefit plans underlying the VSP. Defendants' 56.1 Statement, ¶ 31; Schwartz Aff., Ex. 18 (June 30, 2004 letter to Weissman from Spina). As a result, he never saw specific program materials until after he left the company. Defendants' 56.1 Statement, ¶ 32.

15. State Street disputes Alleged Fact No. 15. Brown did not participate in State Street's U.S. retirement plan and thus was not eligible to participate in the Supplemental Executive Retirement Plan ("SERP"), an unfunded excess benefit plan that merely supplemented the U.S. retirement plan. June 18, 2003 ECC Information Binder, at 3 (a copy of which is attached as Exhibit 14 to the Declaration of Rex Lee dated September 26, 2006); Schwartz Aff., Ex. 18 (June 30, 2004 letter to Weissman from Spina); Defendants' 56.1 Statement, ¶ 22.

16. State Street disputes Alleged Fact No. 16. Ultimately, the VSP was required to be approved by State Street's board of directors (the "Board") and its committee on executive compensation, the Executive Compensation Committee (the "ECC"). Defendants' 56.1 Statement, ¶¶ 3-4, 7-8; Lee Decl., ¶ 5, Ex. 52 (de Ocejo Tr. 19:17-22); Lee Decl., ¶ 4, Ex.

3

51 (Spina Tr. 6:19-21); Lee Decl., ¶ 7, Ex. 54 (Sergel Tr. 7:6-12; 12:14-13:1); Lee Decl. ¶ 8, Ex. 55 (Hill Tr. 6:1-10).

17. State Street disputes Alleged Fact No. 17 and incorporates its response to No. 16, above.

18. State Street disputes Alleged Fact No. 18 and incorporates its response to No. 16, above. Moreover, Brown mischaracterizes Ronald Logue's deposition testimony. Logue testified that David Spina did not have the authority to decide if a particular employee, like Brown, would be eligible for the VSP. Lee Decl., ¶ 6, Ex. 53 (Logue Tr. 20:14-21).

19. State Street disputes Alleged Fact No. 19. State Street's management presented the VSP to the ECC and the Board on June 18 and 19, 2003, respectively, for their approval. Defendants' 56.1 Statement, ¶¶ 3-4, 7-8; Lee Decl. ¶ 5, Ex. 52 (de Ocejo 19:17-22).

20. State Street disputes Alleged Fact No. 20 and incorporates its response to No. 16, above. The evidence on which Brown relies demonstrates the complete opposite. As the minutes to the Board's June 19, 2003 meeting show, the Board approved the modifications to the SERP and State Street's U.S. retirement plan that were necessary to implement the VSP. Schwartz Aff., Ex. 14 (June 19, 2003 Board minutes at 3). Moreover, it reviewed and approved the "actions taken by the Executive Compensation Committee" at the ECC's June 18, 2003 meeting. *Id.* These actions included votes the ECC took to modify the terms of State Street's stock option plans and the Supplemental Defined Benefit Pension Plan (the "Executive SERP") to provide enhanced benefits under the VSP. Schwartz Aff., Ex. 13 (June 18, 2003 ECC minutes at 1-6). The minutes also demonstrate that the Board approved the eligibility criteria management proposed for "VSP participants." The documents underlying management's proposal show that it presented to the ECC and the Board a program that was limited to certain

U.S. employees. June 18, 2003 ECC Information Binder at 1; June 19, 2003 Board Presentation at 2 (copies of which are attached as Exhibits 14 and 15, respectively, to the Declaration of Rex Lee dated September 26, 2006).

21. State Street disputes Alleged Fact No. 21 and incorporates its responses to Nos. 16-20, above.

22. State Street disputes Alleged Fact No. 22 and incorporates its responses to Nos. 16-20, above.

23. State Street disputes Alleged Fact No. 23 and incorporates its responses to Nos. 16-20, above.

24. State Street does not dispute Alleged Fact No. 24, but it is incomplete. The subject would not have been raised because, as a U.K. employee, Brown was not eligible to participate in the VSP. Defendants' 56.1 Statement, ¶¶ 31-32.

25. State Street does not dispute Alleged Fact No. 25. This allegedly undisputed fact, however, is incomplete in that, as a U.K. employee, Brown was not eligible to participate in the VSP. *Id.* It also omits the fact that State Street offered the VSP only to certain of its U.S. employees. *Id.*, ¶ 9.

26. State Street disputes Alleged Fact No. 26. Spina was not concerned with losing SSgA's leadership simply upon learning that John Snow and John Serhant intended to elect the VSP. This was so because he believed that Snow and Serhant, while experienced professionals, focused on narrow areas of SSgA's business. Schwartz Aff., Ex. 5 (Spina Tr. 16:5-24).

27. State Street disputes Alleged Fact No. 27. Brown was represented by an employment lawyer throughout his time at SSgA. Defendants' 56.1 Statement, ¶ 30.

5

28. State Street disputes Alleged Fact No. 28. Tim Harbert did not intend to elect the VSP and therefore Brown would not have been the only member of the G4 to remain at SSgA. *Id.*, ¶ 36; Brown's Alleged Fact No. 30.

29. State Street disputes Alleged Fact No. 29 for the same reasons as set forth in its response to No. 27.

30. State Street disputes Alleged Fact No. 30 except that Brown relied on the alleged discontent among SSgA's U.K. employees as an excuse to approach Spina for his personal benefit. Schwartz Aff., Ex. 5 (Spina Tr. 12:8-13:6).

31. State Street disputes Alleged Fact No. 31. Brown understood the business reasons why State Street did not offer the VSP to all of its employees generally. Defendants' 56.1 Statement, ¶¶ 31-33.

32. State Street disputes Alleged Fact No. 32. Brown's assertions ignore Spina's testimony regarding the importance of Tim Harbert. Schwartz Aff., Ex. 5 (Spina Tr. 16:11-12).

33. State Street disputes Alleged Fact No. 33. This allegedly undisputed fact omits the fact that Brown never discussed with Spina any specific terms or obligations, including precisely how long he would have to remain with SSgA in order to receive benefits. Defendants' 56.1 Statement, ¶¶ 37-41, 44. Nor did he know how the VSP would apply to senior executives, like him, until this litigation began. *Id.*, ¶ 32. He also ignores the fact that the "expectation" he refers to was never discussed with Spina. Lee Decl., ¶ 2, Ex. 49 (Brown Tr. 111:1-15).

34. State Street disputes Alleged Fact No. 34 and refers to the transcript of Spina's deposition testimony for its complete contents. Defendant's 56.1 Statement, ¶¶ 37-41.

35. State Street disputes Alleged Fact No. 35. Spina never reached an agreement with Brown. *Id.*, ¶¶ 37-41, 44-46.

36. State Street disputes Alleged Fact No. 36 and incorporates its responses to Nos. 33-35, above.

37. State Street disputes Alleged Fact No. 37. At his deposition, Brown confirmed that Spina returned to work sometime in the third or fourth quarter of 2003. Lee Decl. ¶ 2, Ex. 49 (Brown Tr. 106:17-107:24).

38. State Street disputes Alleged Fact No. 38. Brown did not have an agreement with Spina. Defendant's 56.1 Statement, ¶¶ 28-29, 37-41, 44-46.

39. State Street disputes Alleged Fact No. 39, except that Brown sent a draft email to Harbert on June 3, 2004, and an email to Spina on June 10, 2004, and refers to those emails for their complete contents. *Id.*, ¶¶ 44-45. As set forth in State Street's responses to Nos. 33-35 and 38, Brown had no agreement with Spina. This allegedly undisputed fact also omits the fact that Brown composed his June 10, 2004 email in order to try and clarify the status of his proposal to Spina, and that his email was thus not intended to be nor did it provide a complete or accurate summary of what they had discussed in 2003. *Id.*

40. State Street does not dispute Alleged Fact No. 40 but refers to Spina's June 15, 2004 email to Brown for its exact contents.

41. State Street does not dispute Alleged Fact No. 41 but refers to Spina's June 29, 2004 email to Luis de Ocejo for its exact contents.

42. State Street disputes Alleged Fact No. 42. To the contrary, Brown knew that Spina was seeking approval from the ECC. Defendants' 56.1 Statement, ¶¶ 28-29, 37-41, 46.

7

43. State Street disputes Alleged Fact No. 43. In fact, Spina had not reached an agreement with Brown and would not have done so without the ECC's approval. *Id.*, ¶¶ 37-41, 46, 53-54.

44. State Street disputes Alleged Fact No. 44 and incorporates its response to No. 43, above.

45. State Street disputes Alleged Fact No. 45 and incorporates its response to No. 43, above. State Street, however, does not dispute that, at its June 16, 2004 meeting, Spina informed the ECC of the conversation he had with Brown or that the ECC requested Spina to provide more information about this conversation in writing.

46. State Street disputes Alleged Fact No. 46 and incorporates its responses to 33-35, 38 and 43, above. Lee Decl., ¶ 7, Ex. 54 (Sergel Tr. 47:9-15); Schwartz Aff., Ex. 4 (Darehshori Tr. 20:11-13).

47. State Street disputes Alleged Fact No. 47 except that Spina sent a letter to Weissman on June 30, 2004. State Street refers to that letter for its complete contents. This allegedly undisputed fact also ignores Spina's testimony that he "was purposeful in this letter to play a role that approached advocacy...." Lee Decl., ¶ 4, Ex. 51 (Spina Tr. 24:24-26:4); Defendants' 56.1 Statement, ¶ 54.

48. State Street disputes Alleged Fact No. 48. While the cited text accurately reflects a portion of Spina's June 30, 2004 letter, Spina testified that he "was trying to put some spin on the ball by using [sic] stronger words with the Board...." Defendants' 56.1 Statement, ¶ 54 (Spina Tr. 25:8-26:4; 27:14-28:15). Moreover, the letter does not, as Brown claims, describe "in more detail the specifics of the 'commitment' to Brown." Rather, the letter demonstrates the complete opposite and describes how Brown and Spina had failed to determine the manner in

8

which Brown's total benefits would be calculated. Schwartz Aff., Ex. 18 (June 30, 2004 letter to Weissman from Spina). This allegedly undisputed fact also omits the fact that Spina concluded the letter by requesting that the ECC approve a severance arrangement for Brown. *Id.*

49. State Street does not dispute that Alleged Fact No. 49 contains an out-of-context quote from Spina's deposition. It is, however, incomplete for the same reasons set forth in State Street responses to Nos. 47 and 48, above.

50. State Street disputes Alleged Fact No. 50. Brown knew that an executed writing as well as the ECC's express approval were required to obtain an agreement with State Street but that neither requirement had been satisfied. Defendants' 56.1 Statement, ¶¶ 28-29, 37-41, 44-46, 52, 58.

51. State Street disputes Alleged Fact No. 51 and refers to its interrogatory responses for their complete contents. State Street made no commitment to Brown. *Id.*, ¶¶ 37-41, 49, 57, 62.

52. State Street disputes Alleged Fact No. 52. Spina had not reached an agreement with Brown. Defendant's 56.1 Statement, ¶¶ 28-29, 37-41, 44-46. Moreover, de Ocejo believed that it "was clear to all executives," including Brown, that the ECC was the final authority on agreements with senior executives. Lee Decl., ¶ 5, Ex. 52 (de Ocejo Tr. 50:12-15).

53. State Street disputes Alleged Fact No. 53 and refers to the cited documents and deposition transcripts for their complete contents. This allegedly undisputed fact is misleading because, although de Ocejo and Boon Ooi had prepared estimates concerning Brown's proposal to Spina, they were creating, what they described as, a "worst-case scenario." Defendants' 56.1 Statement, ¶ 56.

54.   State Street disputes Alleged Fact No. 54 and incorporates its response to No. 53, above.

55.   State Street disputes Alleged Fact No. 55 and incorporates its response to No. 53, above.

56.   State Street disputes Alleged Fact No. 56 and refers to the cited minutes for their complete contents. Defendants' 56.1 Statement, ¶ 57.

57.   State Street disputes Alleged Fact No. 57. In fact, none of the ECC members believed that Spina had committed State Street to an executive compensation agreement with Brown. Lee Decl., ¶ 7, Ex. 54 (Sergel Tr. 21:14-22:1; 23:17-24:5; 44:5-24); Lee Decl., ¶ 8, Ex. 55 (Hill Tr. 18:1-8; 26:17-27:5); Lee Decl., ¶ 9, Ex. 56 (Weissman Tr. 32:22-33:23; 36:16-37:11); Schwartz Aff., Ex. 4 (Darehshori Tr. 22:5-12). Moreover, aware of their role as the final decision-maker on executive compensation, the ECC members did not feel compelled to accept the recommendation that Spina had made to them in person and by letter. Lee Decl., ¶ 7, Ex. 54 (Sergel Tr. 21:14-22:1; 23:17-24:5; 44:5-24).

58.   State Street disputes Alleged Fact No. 58 and incorporates its responses to Nos. 43-46 and 57, above.

59.   State Street does not dispute Alleged Fact No. 59.

60.   State Street disputes Alleged Fact No. 60 and incorporates its responses to Nos. 33-35, 38, 43 and 57, above. Moreover, this allegedly undisputed fact ignores the fact that, after the ECC's September 15, 2004 meeting, de Ocejo told Brown that the ECC had reviewed his proposal but that "nothing was going to happen." Defendants' 56.1 Statement, ¶ 59.

61.   State Street disputes Alleged Fact No. 61 and incorporates its responses to Nos. 57-58 and 60, above. Defendants' 56.1 Statement, ¶¶ 28-29.

62.  State Street does not dispute Alleged Fact No. 62.

63.  State Street disputes Alleged Fact No. 63. Logue stated that, based on his conversations with Harbert and his knowledge that the ECC had reviewed Brown's proposal but did not take action, he understood that the ECC had not approved a severance arrangement for Brown. Lee Decl., ¶ 6, Ex. 53 (Logue Tr. 76:5-78:7).

64.  State Street disputes Alleged Fact No. 64 and refers to Logue's deposition transcript for its complete contents. In fact, Logue believed that "Mr. Brown didn't have any rights. There was no agreement, there was nothing." Lee Decl., ¶ 6, Ex. 53 (Logue Tr. 37:1-12).

65.  State Street disputes Alleged Fact No. 65 for the same reasons as those set forth in its responses to Nos. 63-64.

66.  State Street does not dispute Alleged Fact No. 66.

67.  State Street disputes Alleged Fact No. 67 and refers to Ooi's deposition transcript for its complete contents. In fact, Ooi testified that he began collecting compensation information on Brown at the end of January 2005 because, in March 2005, Brown was to become eligible for participation in the Executive SERP. Schwartz Aff., Ex. 8 (Ooi Tr. 65:9-10). Ooi further testified that he could not remember when Bill Hunt was appointed head of SSgA and that his attempts to gather Brown's compensation information were thus wholly unrelated to the announcement of Hunt's appointment. *Id.*, Ex. 8 (Ooi Tr. 74:8-12).

68.  State Street disputes Alleged Fact No. 68. In fact, Brown was still the Group Chief Investment Officer, and 2004 had been his peak earning year at SSgA. *Id.*, Ex. 1 (Brown Tr. 165:1-22).

69.  State Street disputes Alleged Fact No. 69 for the same reasons as set forth in its response to No. 68, above.

70. State Street disputes Alleged Fact No. 70. Brown wrote to Logue on March 11, 2005 with the intent of resigning. Defendants' 56.1 Statement, ¶ 64. When State Street reminded him that the ECC had not approved his proposal to Spina, Brown made no effort to retract his resignation. *Id.*

71. State Street disputes Alleged Fact No. 71 and incorporates its response to No. 70, above.

72. State Street disputes Alleged Fact No. 72 and incorporates its response to No. 70, above.

73. State Street disputes Alleged Fact No. 73. Brown intended his March 11, 2005 letter to Logue to be a letter of resignation, and State Street accepted it as such. *Id.*

74. State Street disputes Alleged Fact No. 74. By his March 11, 2005 letter to Logue, Brown gave notice of his resignation. *Id.* State Street, through Bill Hunt, formally accepted his resignation a week later and, as expected, prepared to inform the media accordingly. *Id.*; Schwartz Aff., Ex. 26 (March 17, 2005 Draft Media Packet).

75. State Street disputes Alleged Fact No. 75 and incorporates its responses to Nos. 33-35, 50 and 60, above. By Hunt's March 17, 2005 letter, State Street reminded Brown, of what he already knew, that the ECC had not approved his proposal. Schwartz Aff., Ex. 27 (Mar. 17, 2005 letter to Brown from Hunt); Defendants' 56.1 Statement, ¶¶ 28-29, 40-41, 46.

76. State Street does not dispute Alleged Fact No. 76. As discussed in State Street's response to No. 43, however, this allegedly undisputed fact is incomplete in that Spina also did not believe he had reached an agreement with Brown.

77. State Street disputes Alleged Fact No. 77 and incorporates its response to No. 43, above.

78. State Street disputes Alleged Fact No. 78 and incorporates its responses to Nos. 43, 50 and 60, above.

79. State Street disputes Alleged Fact No. 79 and incorporates its responses to Nos. 38, 50 and 60, above.

80. State Street disputes Alleged Fact No. 80. This allegedly undisputed fact is misleading because Brown's testimony reveals that any knowledge of this subject by Marrs or Leahy came from Brown. Schwartz Aff., Ex. 1 (Brown Tr. 142:13-143:13).

81. State Street disputes Alleged Fact No. 81 and incorporates its responses to Nos. 50 and 60, above. Moreover, as set forth in response to No. 43, above, Spina had not exceeded his authority because he did not reach an agreement with Brown but instead planned only to raise Brown's proposal with the ECC. Defendants' 56.1 Statement, ¶¶ 37-41, 46; Schwartz Aff., Ex. 5 (Spina Tr. 47:21-24).

82. State Street disputes Alleged Fact No. 82. In fact, Darehshori did not believe Spina had entered into a definite agreement with Brown. Schwartz Aff. Ex. 4 (Darehshori Tr. 22:5-12).

83. State Street disputes Alleged Fact No. 83 and refers to Logue's deposition transcript for its complete contents. In fact, Logue testified that the ECC had the final authority over the matters Brown had discussed with Spina and that, because the ECC had never approved a final agreement, "Mr. Brown didn't have any rights. There was no agreement, there was nothing." Lee Decl., ¶ 6, Ex. 53 (Logue Tr. 37:1-12).

84. State Street disputes Alleged Fact No. 84. Brown was represented by an employment lawyer throughout his time at SSgA. Defendants' 56.1 Statement, ¶ 30. Moreover, this allegedly undisputed fact is misleading because, while Brown claims he consistently ignored

headhunters, he was never required to remain with SSgA for any definite period of time. *Id.*, ¶ 37-38 (Brown Tr. 112:7-13).

      85.    State Street does not dispute Alleged Fact No. 85.

**DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS**

      86.    After receiving a copy of Spina's June 30, 2004 letter to Robert Weissman, Brown did nothing to clarify with State Street the status of his proposal to Spina. Defendants' 56.1 Statement, ¶ 58, 62 (Hill Tr. 26:20-21);

      87.    At no time did anyone at State Street inform Brown that, pursuant to his conversation with Spina in 2003, he had an agreement with State Street that would allow him to receive VSP-like benefits solely at his election. *Id.*, ¶ 38-40, 46, 51-52, 59, 61; Lee Decl., ¶ 6, Ex. 53 (Logue Tr. 76:5-16).

Dated:   New York, New York
            October 31, 2006

                                        Respectfully submitted,

                                        QUINN EMANUEL URQUHART
                                          OLIVER & HEDGES, LLP

                                        By:    /s/ Peter Calamari
                                             Peter E. Calamari (*Pro Hac Vice*)
                                             Rex Lee (*Pro Hac Vice*)

                                        51 Madison Avenue, 22nd Floor
                                        New York, New York 10010
                                        (212) 849-7000

                                        HARE & CHAFFIN

                                        By:    /s/ David B. Chaffin
                                             David B. Chaffin
                                             BBO No. 549245

                                        160 Federal Street
                                        Boston, MA 02110
                                        (610) 330-5000

                                        *Attorneys for Defendants*
                                          *State Street Corporation*
                                          *and State Street Global Advisors*

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 31, 2006.

                                                    /s/ Rex Lee