UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------------------------- x
ALAN BROWN,                                             :
                                                        :
                    Plaintiff,                          :
                                                        :   Case No. 05 Civ. 11178 (NG)
          -against-                                     :
                                                        :   Leave to file granted
STATE STREET CORPORATION                                :   on December 5, 2006
and STATE STREET GLOBAL                                 :
ADVISORS,                                               :
                                                        :
                    Defendants.                         :
------------------------------------------------------- x
```

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN
## FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

HARE & CHAFFIN
160 Federal Street, 23rd Floor
Boston, MA 02110
(617) 330-5000

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT.............................................................................................................2

I.    BROWN STILL FAILS TO SHOW THAT HE FORMED AN AGREEMENT
WITH STATE STREET...................................................................................2

    A.    Brown's Affidavit Conflicts With His Prior Deposition Testimony And
Should Not Be Considered In Ruling On State Street's Motion For
Summary Judgment. ...........................................................................2

    B.    Brown Still Cannot Demonstrate The Existence Of An Enforceable
Contract. ...........................................................................................2

        1.    The Evidence Demonstrates That Brown Knew The ECC's
Approval Was Necessary To An Agreement With State Street. ...........3

        2.    Brown Never Reached An Agreement With Spina On The Material
Terms Of The Alleged Deal. ......................................................4

        3.    Brown's Multiple Mischaracterizations Of The VSP Should Also
Be Rejected..............................................................................6

II.    STATE STREET IS NOT JUDICIALLY ESTOPPED FROM ASSERTING
ERISA PREEMPTION.....................................................................................7

CONCLUSION .......................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Aretakis v. Gen. Signal, Inc.,
    No. 05-civ.-10257, 2006 WL. 1581781 (D. Mass. June 7, 2006) ..............................................6

Emerson v. Ackerman,
    124 N.E. 17 (Mass. 1919)..............................................................................................5

Finn v. McNeil,
    502 N.E.2d 557 (Mass. App. Ct. 1987) ..........................................................................5

Franco v. Selective Ins. Co.,
    184 F.3d 4 (1st Cir. 1999)..............................................................................................9

Hastings Associates, Inc. v. Local 369 Building Fund, Inc.,
    675 N.E.2d 403 (Mass. App. Ct. 1997) ..........................................................................5

Moos v. Hampshire College,
    No. 97-civ.-30262, 1999 WL. 377259 (D. Mass. June 8, 1999) ..............................................5

New Hampshire v. Maine,
    532 U.S. 742 (2001) ..............................................................................................8, 9

Simons v. American Dry Ginger Ale Co., Inc.,
    140 N.E.2d 649 (Mass. 1957)..............................................................................................5

Tiffany v. Sturbridge Camping Club, Inc.,
    587 N.E.2d 238 (Mass. App. Ct. 1992) ..........................................................................3

Defendants State Street Corporation (the "Corporation") and State Street Global Advisors ("SSgA") (collectively, "State Street") respectfully submit this reply memorandum of law in further support of their motion for summary judgment dismissing with prejudice the amended complaint of plaintiff Alan Brown ("Brown").

## Preliminary Statement

State Street's moving papers demonstrated that Brown never created an enforceable agreement with State Street, in part, because (i) from the time he first proposed the idea of receiving VSP-type benefits to David Spina until the day Spina left State Street -- over a year later -- Brown did nothing to finalize an agreement that he claims would have been worth millions of dollars and (ii) after Spina left, Brown continued to ignore the matter, instead pursuing SSgA's vacant CEO position, despite the fact that he knew his proposal was never approved, and was in fact being questioned, by the Executive Compensation Committee (the "ECC") of State Street's board of directors (the "Board").[1]  State Street further established that, even if Brown could prove an enforceable agreement despite these deficiencies, his common-law claims are preempted by the Employee Retirement Income Security Act of 1974.

In a desperate attempt to create an issue of fact, Brown submits his own affidavit, a document replete with statements that contradict numerous admissions he made at his deposition.  Not only should his affidavit be rejected from consideration here (as set forth more fully in State Street's accompanying motion to strike), but, even if accepted, his self-serving affidavit still fails to create a genuine issue of material fact.  In addition, having no answer to

---

[1] Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment (D.E. 52) ("Def. Mem.") at 14-23.  As State Street's moving papers further demonstrated, Brown cannot show (i) that he and Spina ever executed a writing as they had agreed would be necessary for a binding agreement or (ii) that Spina had actual or apparent authority to commit State Street to executive compensation arrangements.  Def. Mem. at 18-19, 21-22.

ERISA preemption, Brown instead asserts that State Street is judicially estopped from making

this argument.  Because State Street is not, its motion should be granted in full.[2]

## Argument

**I.**   **BROWN STILL FAILS TO SHOW THAT HE FORMED AN AGREEMENT WITH STATE STREET.**

**A.**   Brown's Affidavit Conflicts With His Prior Deposition Testimony And Should Not Be Considered In Ruling On State Street's Motion For Summary Judgment.

In opposing State Street's motion, Brown submits an affidavit from himself

stating (i) that, though the ECC's charter was easily accessible on State Street's website, he did

not read it until 2005, (Brown's Affidavit, ¶ 4) and (ii) that he "had been provided with *detailed*

information about the VSP" and had "*detailed* conversations" about it with SSgA's three most

senior managers.  (*Id.*, ¶¶ 2-3) (emphasis added).  As demonstrated by State Street's

accompanying motion to strike Brown's affidavit ("Mot. to Strike"), these statements plainly

contradict his prior testimony (i) that he had read the ECC's charter while at State Street and (ii)

that, before this litigation began, he had only reviewed "general" information on the VSP.  Mot.

to Strike at 2-3.  Brown's affidavit is nothing more than an improper eleventh hour attempt to

repair the damage from his previous sworn testimony.  It is well-settled that such an affidavit

should be stricken from the record.[3]  *See id.* at 3-4 (citing cases).

**B.**   Brown Still Cannot Demonstrate The Existence Of An Enforceable Contract.

Even if the affidavit were considered on summary judgment, Brown still fails to

create a genuine issue of fact for two reasons.  First, regardless of whether he had read the ECC's

---

[2] Brown also opposes State Street's motion for summary judgment on his theories of promissory estoppel, ratification and actual (or apparent) authority.  With respect to these theories, Brown does not raise any new issues in his opposition beyond those which he discussed in his cross-motion for summary judgment.  As such, State Street incorporates by reference its opposition to Brown's motion for summary judgment (D.E. 63) in further support of its motion as to these theories.

[3] As State Street's motion to strike further demonstrated, Paragraph 3 of Brown's affidavit should be independently stricken on the grounds that it contains inadmissible lay opinion.  Mot. to Strike at 5.

charter, the overwhelming evidence in the record demonstrates that he knew the ECC was

required to approve his proposal yet (contrary to what one would expect) he never attempted to

confirm his purported multi-million dollar agreement with State Street. Second, the allegedly

"detailed" discussions he had concerning the VSP do nothing to show that he had reached an

understanding with Spina on how the VSP would apply to his unique situation. Rather, as

reasonable jurors would be compelled to find, Brown never finalized his alleged agreement with

Spina, despite having ample opportunity to do so.

1.    The Evidence Demonstrates That Brown Knew The ECC's Approval Was
      Necessary To An Agreement With State Street.

In its moving papers, State Street established that Brown knew the limits of

Spina's authority not only from the numerous awards he received from State Street but from

Spina's persistent warnings that there were aspects of what they had discussed over which he had

no control. Def. Mem. at 19-21. In response, Brown first suggests that the statements in his

agreements, indicating that his awards had been approved by the ECC, were merely "fine print."

*See* Pl. Opp. at 12. This argument is easily rejected because, under Massachusetts law, parties to

a contract are assumed to have read and understood the terms of the contract they signed. *See*,

*e.g.*, *Tiffany v. Sturbridge Camping Club, Inc.*, 587 N.E.2d 238, 240 n.5 (Mass. App. Ct. 1992)

(rejecting plaintiffs' claim that contracts were "form" with "small print"). Indeed, Brown's

testimony confirms that he did so understand. (Brown Tr. 23; Defendants' Rule 56.1, ¶ 25).

Brown also makes the baffling (and unavailing) argument that Spina, by

reminding Brown of the limits on his authority, was actually confirming his ability to secretly

commit State Street to an executive compensation agreement. *See* Pl. Opp. at 12. This was so,

he claims, because the ECC had already approved modifications to State Street's equity plans in

order to implement the VSP, and Brown and Spina had limited their purported agreement to

3

these modifications. There is absolutely no evidence to support Brown's trumped-up theory that, by approving the VSP, the ECC had in some way modified his awards or that Spina believed this to be the case. In fact, because Brown knew well that he was never invited to participate in the VSP (and thus would not benefit from the modifications to State Street's equity plans that the ECC had approved only for VSP participants), the conclusion to which his admission leads is clear: he knew he did not have a final agreement with State Street.[4]

> 2.  Brown Never Reached An Agreement With Spina On The Material Terms Of The Alleged Deal.

In his affidavit, Brown claims to have had "detailed" conversations concerning the VSP. Not only do these statements conflict with his deposition testimony, but his reliance on them is misplaced. This is so because the crucial issue is not whether he knew how the VSP enhanced the benefit plans underlying it but instead whether he and Spina had reached an agreement regarding how the VSP (a program that only affected U.S. benefits) would (as he claims) be modified to apply to him, a U.K. employee with U.K. benefits and no intention of leaving SSgA. As State Street's moving papers established, they did not.[5]

No doubt realizing this, he asks the Court to speculate and supply for him the material terms that he failed to agree on with Spina. *See id.* at 3-5. No case supports this

---

[4] It is also worth noting that Brown's understanding of the ECC approval process was not limited to his equity or stock option awards. Rather, Brown also received incentive compensation awards (or cash bonuses), which indicated that the ECC "ultimately approved [his] individual award." (Defendants' Rule 56.1 Statement, ¶ 28; Ex. 32). Moreover, he knew that the Board had approved his election as an executive vice president of State Street, (*Id.*, Ex. 20), and that the Supplemental Defined Benefit Pension Plan (the "Executive SERP") had been implemented only upon the Board's final approval. (*Id.*, Ex. 28). As a result, there can be no doubt that reasonable jurors would categorically reject Brown's claim that, after spending ten years at a major public company, the fact that the Board was the final authority on any significant benefit he received somehow escaped him.

[5] For example, at his deposition, Brown admitted that they never agreed, among other things, on how long he was required to stay at SSgA to receive benefits or how his total pension benefits would be calculated given that Brown did not participate in the U.S. benefit plans underlying the VSP. Def. Mem. at 15-16.

request.[6] Rather, in its initial papers, State Street showed that, while parties are not required to specify every contractual detail to have an enforceable agreement, courts will not supply those terms that are so essential to defining the parties' basic obligations, such as when an option can be exercised or the method by which to calculate the value of a party's benefit. Def. Mem. at 17.

As a last resort, Brown claims that the mere fact he remained at SSgA until early 2005 (even though no one, including himself, believed he was obligated to do so) somehow cures his specific failure to agree with Spina on how long he was required to stay to receive benefits. *See* Pl. Opp. at 4-8. This is so, he argues, because courts have occasionally accepted employees' continued employment as adequate consideration to support modifications, such as non-competition or arbitration clauses, to their at-will employment agreements. *See id.*

Brown's argument and his interpretation of the authority are wrong because he confuses two very distinct concepts in contract law: consideration and indefiniteness. In all of the cases on which he relies, there was no question whether the material terms of the modification were clear; rather, the only issue was whether there was adequate consideration to support it.[7] Yet, when directly confronted with the issue here, courts routinely hold that vague assurances of "continued" employment are too general and indefinite to be enforceable. *See, e.g., Moos v. Hampshire College*, No. 97-civ.-30262, 1999 WL 377259, at *7 (D. Mass. June 8, 1999) (representation that position would continue "long-term" was too vague to be binding).

---

[6] Indeed, the cases on which Brown relies are entirely distinguishable from the present case. For example, in *Finn v. McNeil*, 502 N.E.2d 557, 561-62 (Mass. App. Ct. 1987), a property case, the parties had already agreed on the essential element of the contract, the purchase price. The only issue concerned the interpretation of an adjustment clause in the contract. *Id.* And in *Hastings Associates, Inc. v. Local 369 Building Fund, Inc.*, 675 N.E.2d 403, 410-11 (Mass. App. Ct. 1997), the court found dispositive the fact that, unlike here, the parties had agreed to appoint a neutral third party to resolve any disputes they might have had concerning the interpretation of the contract's specific terms. Moreover, in *Simons v. American Dry Ginger Ale Co., Inc.*, 140 N.E.2d 649, 653 (Mass. 1957) and *Emerson v. Ackerman*, 124 N.E. 17, 20 (Mass. 1919), the defendants' obligations were not triggered by the duration of the plaintiffs' performance. Because duration was not an essential element of the contracts in these cases, as it is here, they were easily construed as terminable at-will.

[7] To be clear, State Street does not concede that Brown's alleged agreement was supported by adequate consideration.

5

In fact, none of the cases on which Brown relies addresses the facts here, where the plaintiff alleges to have an option to receive benefits but readily concedes that the parties never agreed on what events would trigger that option or when he could exercise it. In this situation, caselaw makes clear that such discussions are too vague to constitute binding agreements. *See, e.g., Aretakis v. Gen. Signal, Inc.*, No. 05-civ.-10257, 2006 WL 1581781, at \*6 (D. Mass. June 7, 2006) (a term indicating when a party becomes entitled to contract benefits is a basic provision courts cannot supply); *see also* Def. Mem. at 14-17 (citing cases).[8]

3.    Brown's Multiple Mischaracterizations Of The VSP Should Also Be Rejected.

Perhaps attempting to show that his purported agreement with Spina was somehow "equitable," Brown continues to portray himself misleadingly as a victim who was wrongfully excluded from the VSP. He incorrectly claims that State Street offered the VSP to all of its U.S. employees, *see* Pl. Opp. at 2, 13, and that, as a senior manager of SSgA, which he also incorrectly claims is a U.S. entity, *see id.* at 13, he was legally entitled to participate in the VSP. *See id.* at 19. This series of convenient misstatements is flatly contradicted by the record. SSgA is a *global* business unit of State Street Bank and Trust Company, not a U.S. entity. *See* Plaintiff's 56.1 Response (D.E. 61-1), ¶ 1. Moreover, State Street offered the VSP only to *certain* of its U.S. employees and could, as Brown concedes, exclude anyone from the program. Defendants' 56.1 Statement, ¶¶ 9, 12; *see* Plaintiff's 56.1 Response, ¶ 12. Thus, like every other State Street employee, Brown had no right whatsoever to participate in the VSP.

_____

[8] Incredibly, Brown argues that, in any event, his theory of promissory estoppel cures his failure to agree with Spina on the material terms of his purported arrangement. *See* Pl. Opp. at 8 n.6. Brown does not cite any case in support of this and, indeed, there are none. Rather, as discussed in State Street's opening brief, a theory of promissory estoppel relieves plaintiffs only from having to prove consideration. Plaintiffs must still prove all the remaining elements of a contract -- including its material terms. Def. Mem. at 23.

Brown only compounds his misstatements when claiming that State Street's management made the "ultimate decision" as to which employees would be eligible for the VSP and that any discussion it had with the Board concerning the VSP was merely for "informational purposes." *See* Pl. Opp. at 13. Nothing could be further from the truth. As discussed in State Street's opposition to Brown's cross-motion for summary judgment, the Board and the ECC voted to approve all aspects of the VSP, including its eligibility requirements. Def. Opp. at 26. While management was authorized to *exclude* otherwise eligible employees from the VSP, Defendants' 56.1 Statement, ¶¶ 9, 12, management had absolutely no power to increase the universe of employees eligible to participate in the program. Because no rational jury would buy into the concept that the directors of major public institutions have only ministerial duties, Brown's mischaracterization of how State Street implemented the VSP should be rejected.

## II.    STATE STREET IS NOT JUDICIALLY ESTOPPED FROM ASSERTING ERISA PREEMPTION.

State Street's moving papers demonstrated that, even if Brown could show he was the recipient of an enforceable promise, his common-law claims still fail because, regardless of whether he seeks recovery from an oral agreement, his claims "relate to" State Street's severance and retirement plans and are thus preempted by ERISA. Def. Mem. at 29-34. State Street further identified two reasons why Brown cannot even recover under ERISA: (i) oral promises, such as his, are unenforceable under the statute and (ii) the Executive SERP, while exempt from ERISA's fiduciary requirements, nonetheless requires that an individual's participation (such as Brown's) be set forth in writing, which indisputably never occurred here. *Id.* at 33-34.

Brown has no answer to any of these points.[9] Instead, in the face of overwhelming authority that supports dismissal of his amended complaint with prejudice, Brown attempts to avoid the merits of his claims and argues that State Street should be judicially estopped from raising these issues because of the arguments it made in its initial motion to dismiss. *See* Pl. Opp. 24-27. This attempt fails for three reasons.[10]

First, State Street's position has been consistent. In its motion to dismiss, State Street argued that the VSP was not an ERISA plan (a position that it maintains here) and that Brown's initial complaint, as it was then plead, could not state an ERISA claim simply by targeting the VSP. Def. Mot. to Dismiss (D.E. 11) at 5-9. Then, in its reply, which, not surprisingly, Brown fails to address in his opposition, State Street set forth the very same argument it makes here concerning ERISA preemption. Def. Reply Mem. (D.E. 15-2) at 6-8. Not only did State Street raise the issue of preemption when briefing its motion to dismiss but it asserted it as an affirmative defense in answering both his initial and amended complaints.

Second, even if State Street had taken an inconsistent position in its initial motion to dismiss (which it did not), Brown cannot show that he is being unfairly disadvantaged now. The reason is obvious: State Street did not prevail before the Court on its initial motion. Courts

---

[9] Moreover, Brown continues to misstate the facts by claiming that the Severance Plan was completely separate from the VSP, which he also mistaken claims established its own severance benefits. *See* Pl. Opp. at 28 n.14. The program documents make clear, however, that the VSP did not provide any benefits itself. As these documents indicate, "[r]eferences to 'EVSP' and 'Executive Voluntary Separation Program' are used for *communication* purposes only. The Executive Voluntary Separation Program is not a separate plan." Defendants' Rule 56.1 Statement, ¶ 6; Ex. 6 (VSP Decision Guide at 22) (emphasis added).

In addition, Brown's argument that the Severance Plan itself indicates that it is not an ERISA plan is simply wrong. *See* Pl. Opp. at 28 n.14. The Severance Plan plainly states that it should not be construed as an "employee pension benefit plan." ERISA plans, however, are either "employee *pension* benefit plans" or "employee *welfare* benefit plans" and it is well settled that severance benefits fall into the latter, not the former, as the Severance Plan confirms. *See* Def. Mem. at 30-31.

[10] While courts have not developed inflexible rules on when judicial estoppel is appropriate, several factors typically inform the decision: (i) "a party's later position must be 'clearly inconsistent' with its earlier position;" (ii) "whether the party has succeeded in persuading a court to accept that party's earlier position;" and (iii) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

8

employ judicial estoppel when a party is attempting to obtain an improper advantage, which

normally requires that the party have "succeeded in persuading a court to accept that party's

earlier position, so that judicial acceptance of an inconsistent position in a later proceeding

would create 'the perception that either the first or the second court was misled.'" *New*

*Hampshire*, 532 U.S. at 750 (omitting citation); *see also Franco v. Selective Ins. Co.*, 184 F.3d 4,

9 (1st Cir. 1999) ("'Unfair advantage' generally requires that a party have 'succeeded previously

with a position directly inconsistent with the one it currently espouses.'") (omitting citation).

Unsuccessful before, State Street obtained no such advantage.[11]

        Finally, State Street has certainly derived no greater advantage than that which

Brown himself obtained from his earlier representations to the Court that "regardless of the

ERISA status of the VSP...this action 'relates to' Brown's claims for benefits under State

Street's various other ERISA plans" and that the Court should "view this case for what it

unabashedly is: a claim that...Alan Brown is entitled to receive...benefits, almost entirely

provided by unquestionable ERISA-based plans." Pl. Opp. to Def. Mot. to Dismiss (D.E. 13) at

1, 11. As a result, State Street is no more judicially estopped from asserting ERISA preemption

than Brown is from arguing the contrary.

---

[11] Brown seemingly argues that State Street gained such an advantage because he "acquiesced" in State Street's position by dropping his ERISA claim. *See* Pl. Opp. at 25. This argument is utterly unconvincing because Brown suffered no harm from removing his ERISA claim, which was merely duplicative of his common-law claims. Moreover, his argument wrongfully assumes that plaintiffs have a choice as to whether ERISA applies to their claims. They do not. *See* Def. Mem. at 29-34. Instead, there can be no doubt that Brown dropped his ERISA claim believing that by doing so he could somehow avoid ERISA preemption and complete dismissal of his claims, as set forth in State Street's motion to dismiss and summary judgment papers.

## Conclusion

For these reasons and those set forth in its initial moving papers and its opposition to plaintiff's cross-motion for summary judgment, State Street respectfully requests that State Street's motion for summary judgment dismissing plaintiff's amended complaint with prejudice be granted in full.

Dated:   New York, New York
         December 5, 2006

                                          Respectfully submitted,

                                          QUINN EMANUEL URQUHART
                                            OLIVER & HEDGES, LLP

                                          By:   ____/s/ Peter Calamari_____
                                                Peter E. Calamari (*Pro Hac Vice*)
                                                Rex Lee (*Pro Hac Vice*)

                                          51 Madison Avenue, 22nd Floor
                                          New York, New York 10010
                                          (212) 849-7000

                                          HARE & CHAFFIN

                                          By:   ____/s/ David B. Chaffin_____
                                                David B. Chaffin
                                                BBO No. 549245

                                          160 Federal Street
                                          Boston, MA  02110
                                          (610) 330-5000

                                          *Attorneys for Defendants*
                                          *State Street Corporation*
                                          *and State Street Global Advisors*

### CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 5, 2006.

                                          _____/s/ Rex Lee_____