RODGERS, POWERS & SCHWARTZ, LLP

18 Tremont Street    ATTORNEYS AT LAW
Boston, Ma 02108
Tel. (617) 742-7010
Fax (617) 742-7225

Harvey A. Schwartz, P.C.
Email • Harvey@TheEmploymentLawyers.com

January 3, 2007

Honorable Nancy Gertner
United States District Judge
United States District Court for the District of Massachusetts
1 Courthouse Way – Suite 4130
Boston MA  02210

    Re:    *Brown v. State Street Corporation, et. al.*
            C.A. No. 05-11178-NG

Dear Judge Gertner:

Overflowing with optimism, I am hopeful that it was simply the lateness of the hour and not that you found the motion unworthy of attention that at the December 19, 2006 hearing you only asked for argument on the defendants' summary judgment motion, and not on the plaintiff's cross-motion. I am writing to direct your attention to Mr. Brown's motion for summary judgment as to liability, especially to his claim under the theory of ratification. I filed this rare plaintiff's motion because I believe it has substantial merit. There are no contested material facts on the ratification issue and the plaintiff's motion should be allowed as a matter of law.

State Street's Executive Compensation Committee never questioned the existence of the "commitment" its chairman and chief executive officer made to Alan Brown, only whether David Spina had authority to make such a commitment. Ratification – which undoubtedly occurred as a matter of law under the present facts – substitutes for lack of authority, mooting any factual dispute as to Spina's authority and negating the Board's only stated reason, at the time of its decisions, for refusing to honor the agreement between Brown and Spina. "Ratification relates back, and has the same effect, as a prior grant of authority by the principal to the agent." *Linkage Corporation*, 425 Mass. 1, 18, 679 N.E.2d 191, 204 (1997).

Spina's June 30, 2004 letter to the Committee (Plaintiff's Exhibit 18) leaves no room to question whether Spina asserted that he had an agreement with Brown. "I made oral commitments to . . . Alan Brown [and two others]," Spina wrote, "[i]n exchange for their continued commitment to remain active as leaders of SSgA." (*Id.*) State Street's Executive Compensation Committee, a subcommittee of its board of directors, refused to implement

Harvey A. Schwartz, P.C.
Kevin Powers
Elizabeth A. Rodgers
Jonathan J. Margolis
Robert S. Mantell
(of counsel) Linda Evans
Laurie A. Frankl
Sara Smolik

January 3, 2007
Page 2 –

this "commitment" only because committee members believed Spina lacked authority to commit the corporation in such a manner. The Committee chairman, Robert Weissman, testified that "we [Weissman and Spina] both knew that he didn't have the authorization to make commitments on behalf of the company." (Plaintiff's Exhibit 6, Weissman deposition p. 25).  Other Committee members also testified they rejected the agreement because they, too, believed Spina exceeded his authority. (Plaintiff's Exhibit 4, Darshori deposition p. 18; Exhibit 7, Hill deposition p. 17; Exhibit 9, Sergel deposition p. 43). There is no record evidence of the Committee considering Spina's commitment to Brown on its merits. State Street repeated this justification right up to its rejection of Brown's claim for benefits, writing to Brown that "David Spina did not have authority to commit State Street to enhance your benefits package in the extraordinary manner you now allege . . ." (Plaintiff's Exhibit 27, March 17, 2005 letter to Alan Brown).

There is no record evidence Brown or Spina doubted that they had reached an agreement. Brown's June 10, 2004 email to Spina (Plaintiff's Exhibit 15) refers to "our agreement." Spina's June 30, 2004 letter to the Committee (Plaintiff's Exhibit 18) does not hedge on whether or not he and Brown exchanged "commitments" to one another. Similarly, there is no evidence that at the time the issue was under consideration that State Street questioned Spina's statement that he had made this commitment to Brown. Management referred to this "commitment" in its communications to the Committee as "David's '<u>oral promises</u>' to John Towers, Alan Brown and Tim Harbert," (Plaintiff's Exhibit 20)(emphasis added) and as "David's <u>verbal commitments</u> to John Towers, Tim Harbert and Alan Brown." (Plaintiff's Exhibit 21)(Emphasis added).  Even the corporation's Human Resources director wrote to the Committee about what he termed the "Alan Brown 'EVSP' <u>Agreement</u>" (Plaintiff's Exhibit 22)(Emphasis added). Management valued this "commitment at $5.54 million. (*Id.*).

As a result, despite the defendants' post-event justifications that agreement was never reached on crucial terms, at the time of its consideration of whether or not to implement Spina's "commitment" to Brown, the only evidence of the Committee's reason for refusing to do so was the belief of Committee members that Spina entered into this agreement with Brown without authority from the Committee itself. Indeed, Spina's lack of actual or apparent authority remains State Street's primary defense to Brown's contract claims and State Street continues to hotly contest Spina's authority to enter into the agreement with Brown. In short, but for its belief that Spina lacked authority to commit the corporation as he said he had done, State Street voiced no legal justification at the time for avoiding that commitment.

Because the question of Spina's authority or lack thereof, apparent or actual, was the corporation's sole reasons for refusing to honor its chairman's action, the doctrine of ratification is dispositive. Ratification by the principal substitutes for the agent's lack of authority. This Court is compelled to find under Massachusetts strict ratification-by-inaction standard that on the uncontested facts showing the conduct of State Street's board of directors after learning of Spina's commitment to Brown, those directors ratified Spina's agreement. As a result of that ratification, Spina' authority or lack of authority became moot.

January 3, 2007
Page 3 –

The Massachusetts standard for ratification by failure to disavow is discussed at length in the plaintiff's memoranda. The Supreme Judicial Court summarized the standard in 1997 in *Linkage Corporation*, 425 Mass. at 18, 679 N.E.2d at 204, as follows,

> Where an agent lacks actual authority to agree on behalf of his principal, the principal may still be bound if the principal acquiesces in the agent's action, or fails promptly to disavow the unauthorized conduct after disclosure of material facts. <u>It is the instant duty of a principal, upon ascertaining the facts, at once to disaffirm an act done in his name by an agent in execution of a power conferred but in a mode not sanctioned by the terms of the agency or in excess or misuse of the authority given</u>.

(Emphasis added). If State Street's directors believed Spina acted without authority in committing State Street to provide the equivalent of EVSP benefits to Brown, those directors had a legal duty to promptly disavow Spina's commitment and to equally promptly inform Brown of their disavowal. The Executive Compensation Committee appears to have believed that the corporation could avoid liability by simply failing to affirm Spina's commitment to Brown. They were wrong in that belief. Their inaction – after notice of their agent's unauthorized action on behalf of the corporation – was insufficient as a matter of law. *See Linkage Corporation*, 29 Mass. App. Ct. at 14-15, 562 N.E.2d at 849, citing *Irving Tanning Co. v. Shir*, 295 Mass. 380, 384 (1936)("Ratification of unauthorized acts of an agent is readily inferred where, after knowledge, the principal makes no effort to repudiate them").

The uncontested facts demonstrate that State Street's directors failed to vote to renounce or repudiate Spina's action on behalf of the corporation. They clearly failed to inform Brown that the corporation would not stand by a commitment made by the corporation's chairman and chief executive officer. As a result, State Street's silence constituted ratification of Spina's commitment, regardless of whether or not Spina himself had authority to make that commitment on behalf of the corporation.

Because of that ratification, State Street's board of directors stood in Spina's shoes in regard to his agreement with Brown. State Street, by ratification, exchanged specific commitments with Brown. Brown met his part of the bargain. Spina said Brown was "the heart of SSgA's business globally." (Plaintiff's Exhibit 5, Spina deposition p. 17). In the midst of what its chief operating office, Spina, candidly admitted were "tough times," (*id.*), and faced with the threat of Brown's departure, Spina chose to give Brown "motivation to stay with the company" (*id.*) by committing to provide him with the equivalent of the EVSP benefits. Spina's efforts were successful. Brown was mollified, he agreed to remain at SSgA and continued managing the trillions of dollars SSgA was responsible for, presumably contributing greatly to the corporation's profits. State Street received the benefits of Spina's bargain with Brown. It is only fair – and required as a matter of law – that Brown receive his portion of that same bargain.

January 3, 2007
Page 4 –

This Court should allow Brown's motion for summary judgment as to liability as to all counts.

                    /s/  Harvey A. Schwartz
                    Harvey A. Schwartz

**Certificate of service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 3, 2007.

                    /s/ Harvey A. Schwartz
                    Harvey A. Schwartz